**Charles Kenneth CAMPBELL, Appellant,**

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Appellee.**

**No. 5101.**

Court of Civil Appeals of Texas, Eastland.

Dec. 22, 1977.

Rehearing Denied Jan. 12, 1978.

Earle Cobb, Jr., Cobb, Thurmond & Bain, San Antonio, for appellant.

George Spencer and Nolan Welmaker, Clemens, Spencer, Welmaker & Finck, San Antonio, for appellee.

RALEIGH BROWN, Justice.

Charles Kenneth Campbell sued Northwestern National Life Insurance Company for specific performance of an alleged option contract authorizing his purchase of an apartment complex owned by Northwestern and alternatively, for the value of Campbell's services in managing and remodeling the property. Northwestern's motion for judgment notwithstanding the verdict of the jury was granted and judgment rendered for Northwestern. Campbell appeals. We affirm.

Campbell alleges that he is an architect and businessman who customarily operates and manages apartments that he owns. He is not in the business of managing apartments for others. On July 8, 1975, an agreement was made between Campbell and Northwestern wherein Campbell agreed to manage and remodel the Les Chateaux Apartments, which were in a "distress" condition, restoring them to reputable condition. Campbell contends that for his services Northwestern promised to pay certain expenses, which were paid, and in addition promised him an option to purchase the apartments at their "cash cost" to Northwestern. Northwestern contends no such promise was made and that Campbell has been paid the only consideration promised.

The following special issues were submitted to and answered by the jury:

"ISSUE NO. 1

Do you find from a preponderance of the evidence that Charles K. Campbell offered to manage and remodel the Les Chateaux Apartments for the amounts paid him by Northwestern National Life Insurance Company and an option to purchase the apartments at the cash cost to Northwestern National Life Insurance Company?

Answer 'We do' or 'We do not'.

We the jury answer ___We do___.

If you have answered Issue No. 1 'We do', then answer Issue No. 2. If you have answered Issue No. 1 'We do not', then do not answer Issues 2 through 9.

ISSUE NO. 2

Do you find from a preponderance of the evidence that Northwestern National Life Insurance Company accepted the foregoing offer?

Answer 'We do' or 'We do not'.

We the jury answer ___We do___.

If you have answered Issue No. 2 'We do not', then answer Issue No. 3. If you have answered Issue No. 2 'We do', then next answer Issue No. 4.

ISSUE NO. 3

Do you find from a preponderance of the evidence that Northwestern National Life Insurance Company caused Charles K. Campbell to believe that his offer had been accepted?

Answer 'We do' or 'We do not'.

We the jury answer _____

ISSUE NO. 4

What do you find from a preponderance of the evidence to be the increase in value, if any, of the apartments resulting from Charles K. Campbell's management and remodeling?

State the amount, if any, in dollars and cents.

We the jury answer $400,000 (Four hundred thousand dollars) ___.

ISSUE NO. 5

Do you find from a preponderance of the evidence that the remodeling and improvements made by Charles K. Campbell to the apartments were done because of the good faith belief that Charles K. Campbell had an option to buy the property at the cash cost to Northwestern National Life Insurance Company?

Answer 'We do' or 'We do not'.

We the jury answer ___We do___.

ISSUE NO. 6

What do you find from a preponderance of the evidence to be the cash cost to Northwestern National Life Insurance Company of the Les Chateaux Apartments?

Answer in dollars and cents, if any.

We the jury answer ___$1,450,053.00___.

ISSUE NO. 7

Do you find from a preponderance of the evidence that Pernel Reitan had the apparent authority to bind Northwestern National Life Insurance Company?

Answer 'We do' or 'We do not'.

We the jury answer ___We do___.

ISSUE NO. 8

What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate Charles K. Campbell for his unpaid services, if any, rendered in behalf of Northwestern National Life Insurance Company in remodeling the Les Chateaux Apartments?

Answer in dollars and cents, if any.

We the jury answer ___$80,095.63___.

ISSUE NO. 9

What amount of money, if any, do you find from a preponderance of the evidence to be the reasonable value of the necessary legal fees incurred by Charles K. Campbell in connection with this suit.

Answer in dollars and cents, if any.

We the jury answer ___$4,980.00___."

Campbell contends that he is entitled (1) to the reasonable value of his services under the rule noted in *Scott v. Walker*, 141 Tex. 181, 170 S.W.2d 718 (1943); or (2) to the enhancement in value of the property because of the improvements made thereon under the rule stated in *Sharp v. Stacy*, 535 S.W.2d 345 (Tex.1976).

In *Scott*, Mrs. Walker sought title and possession of a town lot. She sued for specific performance of a contract to convey or devise the premises in consideration of services performed by her alleging full performance and breach of the contract because of a transfer of the property to others. Alternatively, she sought to recover the reasonable value of her services. Defenses pleaded were the statute of frauds and the two year statute of limitations.

The court said:

"Notwithstanding the fact that contracts like that upon which respondent relies are within the statute of frauds, the party who has performed the services contemplated by the contract is not without remedy. By reason of the statute, he may not bring an action to enforce the other party's obligation to convey or devise real estate, but he may sue for and recover the reasonable value of the services rendered . . . To prevent injustice the law implies, instead of the promised conveyance or devise of real estate, the obligation to pay the reasonable value of the services, or, as said in *Laughnan v. Laughnan's Estate*, 165 Wis. 348, 162 N.W. 169, the law substitutes for the promise to convey or devise real estate as a consideration for the services the promise to pay their reasonable value. In such case the suit is not for the enforcement of the parol contract; it is on the implied contract to pay for the services performed . . .

While the contract is unenforceable by reason of the statute of frauds, it is nevertheless important to the plaintiff, suing for the value of services, to establish the contract, in order to show that the services were not gratuitously rendered and that the suit is not barred by limitation . . ."

The rule in *Scott* permits recovery for reasonable value of services rendered when by reason of the Statute of Frauds an action to enforce the other party's obligation to convey or devise real estate will not prevail. *Scott*, however, contemplates establishment of a contract.

*Sharp* also contemplates a contract between the parties, the court saying therein:

"The alleged oral agreement between Junior and his parents is clearly within the statute of frauds. Tex.Bus. & Comm. Code Ann. § 26.01(b)(4). To be resolved is whether the performance by Junior Stacy 'relieves it from the operation of the statute of frauds, or, as more accurately stated, renders the contract enforcible in equity notwithstanding the statute.' *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921)."

Campbell concedes "there was no specific agreement as to time and manner of payment of the purchase price and time of performance, and the contract violated the Statute of Frauds".

The court in *Botello v. Misener-Collins Company*, 469 S.W.2d 793 (Tex.1971) considering the enforceability of a contract said:

". . . the parties may have reached some partial agreement for the sale and purchase of the land, but by that agreement only $5,000 of the $200,000 was to be paid in cash and the balance was to be deferred for payment and receipt at some subsequent time or times. As to the payment of $195,000, there was no agreement as to time or how that time could be determined. Without an agreement of the parties on this essential feature of the trade, there is no contract for the court to enforce—either by ordering specific performance or by awarding damages for a breach. *Bryant v. Clark*, supra; *Bean v. Holmes*, 236 S.W. 120 (Tex.Civ.App.1922, writ ref'd); Anno., 68 A.L.R.2d 1221 (1959)."

The special issues to which the jury responded fail to establish how Campbell was to pay the "cash cost" of the apartment. An enforceable contract granting Campbell an option to purchase the apartments was, therefore, not established. This court in *Sharp v. Stacy*, 525 S.W.2d 721 (Tex.Civ. App.—Eastland 1975) considering the effect of answers to immaterial issues on the granting of a judgment notwithstanding the verdict quoted *Pigg v. International*

*Hospitals, Inc.*, 421 S.W.2d 169 (Tex.Civ. App.—Dallas 1967, writ ref. n. r. e.), wherein the court said:

". . . Rule 301, T.R.C.P., authorizes the court to disregard any special issue jury finding that has no support in the evidence. It has been held repeatedly that a jury finding which is immaterial to the real issues in the case, even though supported by evidence, may likewise be disregarded. *First American Life Ins. Co. v. Slaughter*, 400 S.W.2d 590 (Tex.Civ. App., Houston 1966, writ ref'd n. r. e.); *Schiller v. Rice*, 151 Tex. 116, 246 S.W.2d 607 (1952); *Owens v. State*, 342 S.W.2d 183 (Tex.Civ.App.—Fort Worth 1961 no writ)."

We hold the court correctly disregarded the jury's immaterial findings and granted judgment non obstante veredicto. Rule 301, T.R.C.P.

We have considered and overrule all other points of error.

Judgment is affirmed.