Charles Kenneth CAMPBELL, Petitioner,

v.

NORTHWESTERN NATIONAL LIFE
INSURANCE COMPANY,
Respondent.

No. B–7395.

Supreme Court of Texas.

Oct. 4, 1978.

Rehearing Denied Dec. 13, 1978.

Cobb, Thurmond, Bain & Clark, Earle
Cobb, Jr., San Antonio, for petitioner.

Clemens, Spencer, Weimaker & Finck,
George H. Spencer and F. Nolan Welmaker,
San Antonio, for respondent.

DANIEL, Justice.

Charles Kenneth Campbell sued Northwestern National Insurance Company for specific performance of an alleged option contract for his purchase of an apartment complex and in the alternative for the reasonable value of his services in remodeling the apartments as requested by Northwestern. The jury found that Northwestern granted Campbell an option to buy the Les Chateaux apartment complex at Northwestern's cash cost as part of the consideration for Campbell's services, and that reasonable value of such services was $80,-095.63. The trial court entered a take-nothing judgment non obstante veredicto. The Court of Civil Appeals affirmed. 565 S.W.2d 248. We reverse the judgment of the Court of Civil Appeals and remand the cause to that court for further proceedings consistent with this opinion.

Northwestern foreclosed its mortgage on the Les Chateaux apartment complex in San Antonio in early July 1975 and purchased the complex at a sheriff's sale for the sum of $1,193,620.00 plus costs. At that time, the complex was in a very distressed physical condition and only about half occupied with tenants. Campbell was known to the local mortgage company servicing the loan for Northwestern as a very successful manager of several apartment complexes in Houston and San Antonio and was recommended as such to the officials of Northwestern. Campbell was not in the business of managing apartments for other persons, but was persuaded to take over the management of this complex. Campbell claims that the option for future ownership was the motivating factor in his decision. It is undisputed that he was paid a fee of $7.50 per unit per month plus five percent of the gross income. In dispute is whether, as additional compensation for his services, Campbell was granted an option to purchase the apartment complex for the amount of cash that Northwestern had in-

vested in the complex. Campbell testified that he would not have taken over this extensive restoration project for a "management fee" alone. Officials of Northwestern testified that no promise was made to Campbell other than that any offer he made to purchase the complex would be considered by the finance committee of Northwestern.[1]

The jury found that, in addition to the specific management fees, Northwestern gave Campbell an option to purchase the apartments at Northwestern's cash cost. It is settled that a trial court is authorized to set aside a jury finding only when there is no evidence to support the finding. Rule 301, Texas Rules of Civil Procedure. In determining that there is "no evidence" to support a jury finding, the court must consider the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences contrary to the finding. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974).

We cannot say from an examination of the record in this light that there is no evidence to support the jury verdict. There was evidence that because of the distressed physical condition of this complex in July 1975, Campbell was required to perform many services in addition to those customarily performed by the manager of an ongoing apartment complex. The Les Chateaux was substantially remodeled and renovated at a cost of over $200,000.00, with Campbell performing many services in the nature of an architect or general supervisor over several subcontractors. There was testimony that the customary management fees which were paid to Campbell allowed him no profit for his services in supervising the remodeling of the complex and that he anticipated his compensation or profit would come through the option to purchase at Northwestern's cost.

1. Campbell made at least two unaccepted written offers to purchase the apartment complex which differed as to the amount of down payment, rate of interest and term of the loan. Actually, Northwestern was interested in sell-

ing the complex if a satisfactory offer was made, but it wanted a larger down payment and a greater interest return on the balance than was offered by Campbell.

**498**

■ Campbell concedes that the oral agreement granting him the option to purchase the complex is unenforceable because of the Statute of Frauds. Tex.Bus. & Comm.Code Ann. § 26.01(b)(4). The question before us is whether he can recover in quantum meruit for the sum of $80,095.63 found by the jury to be the reasonable value of his unpaid services in remodeling the complex. The lower courts concluded that he could not recover because there was no agreement as to the time and manner of payment of the purchase price under the option and hence no contract at all. Without an agreement of the parties as to the time and manner of exercising such an option, there is no contract for the court to enforce—either by ordering specific performance or by awarding damages for a breach. *Botello v. Misener-Collins Company,* 469 S.W.2d 793 (Tex.1971); *Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614 (1962).

■ Nevertheless, the right to recover in quantum meruit does not grow out of the contract, but is independent of it. This right is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman,* 391 S.W.2d 48 (Tex.1965); *Scott v. Walker,* 141 Tex. 181, 170 S.W.2d 718 (1943); *Colbert v. Dallas Joint Stock Land Bank of Dallas,* 129 Tex. 235, 102 S.W.2d 1031 (1937); 1 *Williston on Contracts* § 3A.

■ The record establishes that Campbell rendered valuable services to Northwestern. After his remodeling and successful management, the apartment complex was changed from a distressed and losing operation to a valuable commercial enterprise. Northwestern did not contend that these services were rendered gratuitously, but rather that Campbell was fully paid as per the agreement. The jury rejected this contention. It found that the sum of $80,095.63 will fairly and reasonably compensate Campbell for the unpaid services rendered in behalf of Northwestern. We conclude that Campbell is not precluded from recovery on his plea in quantum meruit and that the trial court erred in disregarding the jury verdict with respect thereto.

■ This conclusion requires a reversal of the judgments of the lower courts. Northwestern asserted a number of cross-points in the Court of Civil Appeals, including alternative points seeking a remand because of alleged factual insufficiency of the evidence to support the jury findings. These points were not considered by the Court of Civil Appeals in view of its affirmance of the trial court's take-nothing judgment. Northwestern, having obtained a totally favorable judgment in the Court of Civil Appeals, was not required to carry forward to this Court its alternative cross-points calling for a remand. *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977); *McKelvy v. Barber,* 381 S.W.2d 59 (Tex. 1964); Hatchell and Calvert, *Some Problems of Supreme Court Review,* 6 St. Mary's L.J. 303, 305–318 (1974). Inasmuch as factual insufficiency points are within the exclusive jurisdiction of the Court of Civil Appeals, we remand the case to that court for determination of such points. *Custom Leasing, Inc. v. Texas Bank & Trust Company of Dallas,* 491 S.W.2d 869 (Tex.1973).

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.