NO. 07-03-0292-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 3, 2004

_____

JAMES L. KILLION, APPELLANT

v.

CHUCK LANEHART, SUCCESSOR INDEPENDENT EXECUTOR
OF THE ESTATE OF BILL A. DAVIS, DECEASED, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-507,797; HON. QUAY PARKER, PRESIDING

_____

OPINION

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

In seven points of asserted error, appellant James L. Killion challenges a judgment

in favor of appellee Chuck Lanehart, as successor Independent Executor of the Estate of

Bill A. Davis, deceased. In those seven points, appellant asserts: 1) the trial court erred

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-2005).

as a matter of law in rendering judgment against him for contingent attorney's fees when there was no written and signed contract for the payment of such fees; 2) the evidence does not support the jury finding in jury question 1 that the parties did not have an agreement as to attorney's fees; 3) the evidence does not support the jury's answer to question 2 finding that appellee was not to pay Bill A. Davis an hourly fee of $150 plus expenses with a minimum fee charge of $5,000; 4) the evidence does not support the jury's answer to question 3 finding that the parties agreed to "an unspecified fee following the application of the original $5,000.00 paid by James Killion"; 5) the trial court cannot, as a matter of law, use the jury's answer to question 4 to support a judgment based upon *quantum meruit*; 6) the evidence does not support the jury's answer to question 4 finding that Bill A. Davis performed compensable work; and 7) the evidence does not support the jury's answer to question 5 finding that $40,000 is a reasonable fee for appeal to the Court of Appeals. For the reasons expressed below, we affirm the judgment of the trial court.

In order to properly discuss the issues in this appeal, it is necessary to refer to the rather complicated facts giving rise to the appeal. Sometime prior to 1997, Bennet Wells (Wells), an employee of the City of Lubbock (the City), while in the course of his employment with the City, was rendered a quadriplegic by a drunk driver. The City, as Wells' self-insured employer, paid Wells the workers' compensation benefits to which he was entitled as a totally disabled employee. Ronnie Agnew, a Lubbock attorney, initially represented Wells in a third party suit under the Texas "dram shop" law against the seller of the intoxicating beverages sold to the driver of the automobile who had caused the accident.

2

The City engaged appellant to act as its attorney on a contingent fee arrangement to attempt to recover its subrogation interest under the workers' compensation law from the dram shop defendant. The case was ultimately settled for the limits of the dram shop's insurance of $1,000,000 plus $20,000 in uninsured motorist proceeds, or a total of $1,020,000. The amount of $870,000 from that settlement was placed in escrow pending resolution of a suit filed on behalf of Ronnie Agnew seeking an apportionment of attorney's fees due.

In early June of 1997, appellant hired Bill A. Davis (Davis), another Lubbock attorney, to represent him in the Agnew attorney apportionment suit. In that regard, appellant testified that he and Davis had only one conversation about Davis' employment. He averred that he told Davis that he, appellant, would want to do all the work and he anticipated that Davis would only have "two, three, four hours in the case." Appellant further testified that Davis told him that he did not want to get involved unless he could make at least $5,000. Appellant said he then responded: "Well, okay , Bill. It will be an hourly fee, and I'll guarantee you the minimum of $5,000.00. And that's what happened." There was no written or signed fee agreement at the time. However, on June 4, 1997, appellant wrote Davis a letter, which in material part, stated:

> I am certainly agreeable to pay your hourly fee of $150.00 per hour plus expenses with the understanding that your minimum fee charge will be $5,000.00.

It is undisputed that the $5,000 was paid to Davis.

In deposition testimony,[2] and in regard to the conversation with appellant, Davis averred: "I wouldn't touch it for less than $5,000.00, just to look into it and see where we stood. And, of course, that might be all of it. It might not be all of it. It just depended on what happened in the case." Davis denied that he had a specific fee agreement with appellant and said that the $5,000 was just supposed to be a retainer "to get me in on the show, because we didn't know how long that show was going on." He denied that he had any discussion about the total fee he would charge and that "we would just sit down and work out something that was fair and reasonable when it was all over with, see what happened, the result, and how much time the whole kit and caboodle - - sit down and just come up with something; be reasonable." Davis averred he had considered and advised on pleadings filed in the case, that he had various conferences with appellant's office and others about the case and the documents in the case, and that he successfully conducted the summary judgment hearing, the trial, and the appeal, although the appeal brief was prepared by appellant's office and reviewed by Davis.

On June 6, 1997, appellant sent Davis a letter enclosing various documents relating to the case and a check in the amount of $2,500. Other than a reference to the check being one-half of the agreed minimum fee, no reference to an agreed fee was made. On June 26, 1997, appellant again wrote Davis enclosing a check in the amount of $2,500, which was referred to as "the remainder of the $5,000 retainer." These are the only written

---

[2]Bill A. Davis was afflicted with throat cancer at the time of the deposition and died prior to the trial of this underlying suit.

4

references to the parties' fee arrangement and it is undisputed that Davis made no response to the 1997 letters.

Although appellant only recalled one discussion about the fee arrangement itself, he testified that on two occasions he spoke to Davis about keeping his hours. The first time was on April 13, 1998, and the second was in this court at the time of the argument during the appeal of the trial court's apportionment of the attorneys' fees held in escrow. On each of these occasions, appellant averred he told Davis to "keep his hours." Other than those requests, appellant never requested any billing or time accounting from Davis.

Davis testified that after he was retained, he maintained an incomplete time record for about two months. He said that during the period of time during which he was keeping a time record, he did not put all of his time on it. According to Davis, the first occasion appellant saw or requested any record of his time was on November 16, 1999, which was when his deposition was taken for this case. He also testified that during the period this case was on appeal, he asked appellant what his idea of a reasonable fee would be, to which appellant responded that he had $10,000 that he could get his hands on "real quick," to which Davis replied, "That ain't going to do it, Jim." Under cross-examination about his fee and when queried whether "this was a contingency fee that you were taking a percentage of," Davis' reply was ". . . there wasn't no percentage mentioned, but I was counting on success." Subsequently, when asked if he "thought that since he [appellant] got a lot of money, you should get a percent of it," his reply was, "That's right; as to how much good I did him, yeah." Davis also admitted he did not know just how many hours he put in on the case.

5

Clyde William "Pete" Harland, a Lubbock attorney, who said he had 32 years trial experience primarily representing plaintiffs, testified that based upon his review of the work done by Davis, the nature of the case, and the factors related to a reasonable fee under Texas Rule of Professional Conduct 1.04, a fair and reasonable fee would be "somewhere in the range of between 25 percent and 33 and a third percent of the amount in dispute." In arriving at that conclusion, he assumed that the parties did not have a contingent fee contract and he was aware that Davis' position was that there was no agreement as to the amount of his fee after the initial payment of $5,000. Harland also testified that the time spent by an attorney on a case could be determined without an attorney maintaining hourly records and that an attorney could easily spend 33 hours in a two-week period on a case. Those conclusions were strongly contested on cross-examination.

John Simpson was called by appellant and averred that he was the one who had recommended Davis to appellant. He had been an attorney since 1974 initially representing plaintiffs. He also had been mediating cases since 1992. Simpson said he had some personal knowledge of the case in question. In his opinion, after reviewing the letter from appellant to Davis, it amounted to "a nonrefundable retainer agreement of $5,000 and the hourly rate for the time will be $150.00 an hour." However, Simpson did admit that he could "see how the parties could argue that there was not a meeting of the minds." He also testified: "Quantum Meruit - - as I understand the law, you cannot have Quantum Meruit if there is an agreement. If there is no agreement, then you can have a Quantum Meruit recovery."

6

The rules by which we consider and determine legal and factual insufficiency questions are by now axiomatic. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which he does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We consider all the evidence in the light most favorable to the jury's verdict, indulging every reasonable inference in favor of the prevailing party. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998). A legal sufficiency point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). If the record contains any evidence of probative force to support the jury's finding, the legal insufficiency challenge must be overruled. *ACS Investors Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Croucher*, 660 S.W.2d at 58. The court of appeals must consider and weigh all of the evidence, and may only set aside the finding if the evidence is so weak, or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford*

7

*Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), *overruled on other grounds by Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex. 2000).  Thus, appellant's matter of law point would only be valid if the evidence establishes conclusively that the parties had entered into a contingent fee contract and if there is any evidence of probative force to raise a fact question in that regard, his point must fail.  Further, if in applying the rule, the court feels that reversal is mandated, it must detail all of the relevant evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.  *Pool v. Ford Motor Co.*, 715 S.W.2d at 635.

If any finding is challenged for factual sufficiency of the evidence, all of the evidence in the record must be reviewed.  *See Plas-Tex, Inc. v. U.S. Steel Corp.* 772 S.W.2d 442, 445 (Tex. 1989).  In order to require reversal, the jury's verdict must be so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.  *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).  If there is conflicting evidence on a disputed fact question, it is the sole and peculiar province of the jury to judge the credibility of the witnesses and assess the weight to be given their testimony in order to arrive at the answer deemed the most reasonable.  In discharging its function, the jury has the sole right to believe all, some, or none of the testimony of the witnesses.  *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796-97 (1951).  We are not authorized to set aside a jury verdict merely because the jury might have drawn a different conclusion from the evidence.  *Id* at 797.

The gist of appellant's argument under this first point is that, because under the evidence, there was no definite agreement as to the amount of  Davis' fee, his fee must

8

have been a contingent one. If it was a contingent fee agreement, he reasons, it would be invalid because it is not in writing and thus fails to meet the legal requirements that a contingent fee agreement should be in writing and signed by the attorney and the client or it is voidable by the client. *See* Tex. Gov't Code Ann. §82.065 (Vernon 1998); Tex. Disciplinary R. Prof'l Conduct 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998).

Under this record, the jury could reasonably have deduced that there was no meeting of the minds between appellant and Davis other than the $5,000 non-refundable retainer and that Davis contended he would seek recovery of the remainder of his fee on a *quantum meruit* basis, with one of the aids to the jury in arriving at a figure that they might consider a percentage of the amount recovered. In Texas, the parties to a contract may agree upon some terms of a contract, and understand them to be a contract and yet leave other terms of the agreement to be made later. *Scott v. Ingle Bros. Pacific Inc.,* 489 S.W.2d 554, 555 (Tex. 1972). Moreover, it is a corollary of the rule that as to those terms left for future discussion, that portion of the agreement is not part of the enforceable portion of the contract. Thus, the resolution of the difference between appellant and Davis as to whether there was or was not an agreement as to the manner and amount of the remainder of Davis' fee was a factual dispute within the province of the jury to resolve. Appellant's first point is overruled.

In his next two points, appellant contends the evidence does not support 1) the jury's answer to question 1 that the parties did not have an agreement as to attorney's fees, and 2) that appellant was not to pay Davis an attorney's fee of $150 per hour plus expenses

9

with a minimum fee charge of $5,000. Our discussion and disposition of appellant's first point foreshadows our disposition of these two points. We have discussed in considerable detail above both the factual evidence and the law pertaining to measuring the factual sufficiency to sustain the jury's answers to questions submitted to them. Suffice it to say that we find the evidence sufficient to sustain the jury's answer to both questions. Appellant's second and third points are overruled.

In his fourth point, appellant argues that the evidence is not sufficient to support the jury's answer to jury question 3 which inquired if the parties agreed to an unspecified fee following the application of the original $5,000 paid by appellant. Under the evidence we have set out above, in particular that of Davis, the jury acted within its province in resolving any factual conflicts in favor of Davis and in finding there was such an agreement. Appellant's fourth point is overruled.

In jury question 4, the trial court inquired if Davis performed compensable work for appellant. In his fifth point, appellant contends as a matter of law that the jury's affirmative answer to that question cannot be used to support a *quantum meruit* judgment. *Quantum meruit* is an equitable theory of recovery which is based upon an implied agreement to pay for benefits received. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). To recover under that doctrine, a plaintiff must establish that: 1) valuable services and/or materials were furnished 2) to the party sought to be charged 3) which were accepted by the party sought to be charged and 4) under such circumstances as reasonably notified the recipient that the plaintiff in performing expected to be paid. *Id*. The right to recover in *quantum meruit* does not grow out of the contract, but is independent

10

of it. The right is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Campbell v. Northwestern National Life Ins. Co.,* 573 S.W.2d 496, 498 (Tex. 1978). Thus, the doctrine could be applicable in instances such as this one. *See Enochs v. Brown,* 872 S.W.2d 312, 320 (Tex. App.–Austin 1994, no writ), *overruled on other grounds by Roberts v. Williamson,* 111 S.W.3d 113 (Tex. 2003). Appellant's fifth point is overruled.

In his sixth point, appellant contends the evidence does not support the jury's finding that Davis performed compensable work for appellant. Our disposition of appellant's preceding points foreshadows our disposition of this point. Suffice it to say, we hold the evidence, if accepted by the jury, which it obviously was, is sufficient to sustain that jury finding.

In his seventh point, appellant argues the evidence is not sufficient to support the jury's finding in response to question 5 that $40,000 would be a reasonable fee for an appeal to the Court of Appeals. In addition to the evidence we have discussed above, appellant introduced into evidence Davis' letter to appellant dated July 27, 1999. In that letter, Davis refers to his opinion that the parties had never actually agreed to a total fee arrangement and, based upon some factors he lists, suggests that a fee of $45,000 "would not be unreasonale [sic]." He then suggests that the $5,000 retainer previously paid be credited on that fee, leaving a balance due of $40,000. In *Prati v. New Prime, Inc.*, 949 S.W.2d 552 (Tex. App.–Amarillo 1997, pet. denied), we had occasion to discuss a point challenging a jury award of damages. Because of the similarity of the awards, that discussion is applicable here. We pointed out that because the jury is the sole judge of the

11

credibility of the witnesses and the weight to be given their testimony, the jury has considerable discretion, and the mental processes by which a jury determines the amount of damages is ordinarily not cognizable by an appellate court and where the law does not provide a precise legal measure of damages, the amount is generally within the discretion of the jury. *Id.* at 555. The evidence in this case is sufficient to sustain the jury's finding that $40,000 was a reasonable fee. Appellant's seventh point is overruled.

In summary, all of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

12