NO. 07-08-0083-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 11, 2009
______________________________

FRED LUCERO, 

                                                                                                 Appellant

v.

LLOYD LUJAN, 

                                                                                                 Appellee
_________________________________

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CI-07E-040; HON. ROLAND SAUL, PRESIDING
_______________________________

Memorandum Opinion
_______________________________
 
Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
          Fred Lucero appeals from a judgment after a bench trial in which he was awarded
possession of a horse named Silver Steel Deck (Silver Steel) but also ordered to pay
damages of $13,977.26 to appellee Lloyd Lujan under the theory of quantum meruit. 
Lucero contends that the evidence is legally and factually insufficient to support that award
because there was no agreement to pay such expenses and no reasonable notice that
Lujan expected to be compensated for riding, training, and maintaining the horse. We
affirm the judgment. 
          Background
          Lucero and Lujan had been involved over the years in several transactions in which
Lujan would take one of Lucero’s horses and break or ride the horse in exchange for
Lucero providing him roping steers. Lujan testified that he and Lucero also were to share
the proceeds of the sales of some of those horses but that Lucero either did not share the
proceeds or shared them in a disproportionate amount.


 As a result, Lujan was reluctant
to accept any more of Lucero’s horses for riding and training. However, he did accept
Silver Steel, a registered quarter horse, after being told by Lucero that he could keep the
horse. 
          Lujan retained possession of Silver Steel for approximately three and one-half
years. During that time, and due to the training provided by Lujan, the horse increased in
value from between $2,500 and $10,000 to between $20,000 and $30,000. So too did the
horse win a number of roping competitions.
            Yet, Lucero never transferred registration of the horse to Lujan. Indeed, the former
testified that he did not give the horse to Lujan. Rather, Lujan was simply to be provided
with roping steers in exchange for riding the horse at the feed lot where Lujan worked. 
According to Lucero, he also requested on several occasions (beginning in August 2006)
that the horse be returned, but Lujan refused to comply. 
          Lucero eventually sued Lujan to regain possession of Silver Steel. And, though the
trial court held that Lucero owned the horse, he was nonetheless ordered to pay Lujan the
aforementioned sum representing the value of the services rendered by Lujan. 
 
          Authority
          In conducting a legal sufficiency review, we review the evidence in the light most
favorable to the verdict by giving credence to favorable evidence if reasonable jurors could
do so and disregarding contrary evidence unless reasonable jurors could not. City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). Additionally, a party attacking the legal
sufficiency of the evidence supporting an adverse finding on an issue on which he did not
have the burden of proof must demonstrate that no evidence supports the finding. 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). Next, in reviewing the factual
sufficiency of evidence supporting a finding on an issue on which the party attacking it does
not have the burden of proof, we must overrule the complaint unless, considering all of the
evidence, the finding is clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). 
          Next, quantum meruit is an equitable remedy arising outside a contract. Vortt
Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). It is based on
a promise, implied by law, to pay for the beneficial services rendered by one and knowingly
accepted by another. Campbell v. Northwestern Nat’l Life Ins. Co., 573 S.W.2d 496, 498
(Tex. 1978). The elements of the claim are: 1) the provision of valuable services or
materials, 2) to the person sought to be charged, 3) which services and materials were
accepted, used, or enjoyed by the person to be charged, 4) under such circumstances as
would reasonably notify the person to be charged that in performing the services, the
plaintiff expected to be paid. Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d at
944. According to Lucero, insufficient evidence exists to satisfy the second and fourth
elements. And, in support of that allegation, he cites the testimony by Lujan and his wife
wherein they indicated that they did not expect reimbursement for training and maintaining
the horse since they purportedly owned it. These statements, however, are not dispositive
of the matter. 
          First, a party may seek alternative relief under both contract and quantum meruit
claims. In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 740 (Tex. 2005). So, the fact
that the trial court found against Lujan with respect to ownership of the horse alone does
not mean he could not recover under a theory of quantum meruit. 
          Second, Lujan and his wife testified that 1) they told Lucero before taking the horse
that he (Lujan) was not going to ride horses for Lucero as he had in the past, 2) though
Lujan took the horse home, he did not ride it for several months, 3) Lucero was also
informed that the horse was being returned, 4) Lujan began to ride and train the horse after
Lucero told him he could keep it, and 5) Lujan understood the latter comment to mean that
Lucero gave Lujan the horse as a gift. To this, we add Lucero’s testimony that he thought
he had “loaned” the horse to Lujan to ride, agreed to compensate Lujan (but only as he
had before, through the provision of roping steers), wanted to eventually sell the horse, 
knew Lujan was riding it in and winning roping competitions, and wherein he opined that
the horse was worth $25,000 (a sum much higher than the horse’s value before Lujan
acquired it). Another witness testified that Lujan was known for having the ability to train
good roping horses, that Silver Steel was “green” (untrained) and would buck before Lujan
acquired it, and that the horse increased in value once Lujan began using it. From these
circumstances, the trial court could have reasonably concluded that the parties came to
no meeting of the minds with regard to the horse’s ownership and training. Thus, no
contract arose between Lujan and Lucero. So too could the trial court have legitimately
concluded that Lucero nonetheless understood that Lujan was riding and roping with the
horse, that Lujan was to be compensated for riding the horse (though the type of
compensation was debatable), that Lujan was in fact training Silver Steel via his riding and
roping with the horse, and that the horse was acquiring a greater market value due to
Lujan’s efforts. In other words, some evidence existed which supported the inference that
Lujan provided valuable services to Lucero which services Lucero accepted under the
belief that he (Lucero) would be obligated to pay Lujan for those services in some way. 
And, because the trial court could so infer based upon the evidence before it, we conclude
that decision to award Lujan quantum meruit was supported by legally sufficient evidence.
          It may well be that Lucero’s testimony with respect to the arrangement differed from
that of Lujan and his wife. Nevertheless, the trial court had the authority to assess the
credibility of the witnesses before it and resolve the inconsistencies. Ponce v. Sandoval, 
68 S.W.3d 799, 806 (Tex. App.–Amarillo 2001, no pet.). It was not required to simply
accept Lucero’s version of what occurred. Couple this with the evidence that Lucero knew
that Lujan was using the horse and thereby improving its skill and increasing by multiples
its value, we cannot say the trial court’s decision was clearly wrong and manifestly unjust
based upon the record before it. So, the decision also enjoyed the support of factually
sufficient evidence. 
          Accordingly, we overrule the points of error and affirm the judgment. 
 
                                                                           Brian Quinn 
                                                                          Chief Justice