NO. 07-08-0083-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 11, 2009
_____

FRED LUCERO,

Appellant

v.

LLOYD LUJAN,

Appellee
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CI-07E-040; HON. ROLAND SAUL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Fred Lucero appeals from a judgment after a bench trial in which he was awarded possession of a horse named Silver Steel Deck (Silver Steel) but also ordered to pay damages of $13,977.26 to appellee Lloyd Lujan under the theory of quantum meruit. Lucero contends that the evidence is legally and factually insufficient to support that award because there was no agreement to pay such expenses and no reasonable notice that Lujan expected to be compensated for riding, training, and maintaining the horse. We affirm the judgment.

*Background*

Lucero and Lujan had been involved over the years in several transactions in which Lujan would take one of Lucero's horses and break or ride the horse in exchange for Lucero providing him roping steers. Lujan testified that he and Lucero also were to share the proceeds of the sales of some of those horses but that Lucero either did not share the proceeds or shared them in a disproportionate amount.[1] As a result, Lujan was reluctant to accept any more of Lucero's horses for riding and training. However, he did accept Silver Steel, a registered quarter horse, after being told by Lucero that he could keep the horse.

Lujan retained possession of Silver Steel for approximately three and one-half years. During that time, and due to the training provided by Lujan, the horse increased in value from between $2,500 and $10,000 to between $20,000 and $30,000. So too did the horse win a number of roping competitions.

Yet, Lucero never transferred registration of the horse to Lujan. Indeed, the former testified that he did not give the horse to Lujan. Rather, Lujan was simply to be provided with roping steers in exchange for riding the horse at the feed lot where Lujan worked. According to Lucero, he also requested on several occasions (beginning in August 2006) that the horse be returned, but Lujan refused to comply.

Lucero eventually sued Lujan to regain possession of Silver Steel. And, though the trial court held that Lucero owned the horse, he was nonetheless ordered to pay Lujan the aforementioned sum representing the value of the services rendered by Lujan.

---

[1]Lucero denied that such an arrangement ever existed.

2

*Authority*

In conducting a legal sufficiency review, we review the evidence in the light most favorable to the verdict by giving credence to favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Additionally, a party attacking the legal sufficiency of the evidence supporting an adverse finding on an issue on which he did not have the burden of proof must demonstrate that no evidence supports the finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). Next, in reviewing the factual sufficiency of evidence supporting a finding on an issue on which the party attacking it does not have the burden of proof, we must overrule the complaint unless, considering all of the evidence, the finding is clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

Next, quantum meruit is an equitable remedy arising outside a contract. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). It is based on a promise, implied by law, to pay for the beneficial services rendered by one and knowingly accepted by another. *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 498 (Tex. 1978). The elements of the claim are: 1) the provision of valuable services or materials, 2) to the person sought to be charged, 3) which services and materials were accepted, used, or enjoyed by the person to be charged, 4) under such circumstances as would reasonably notify the person to be charged that in performing the services, the plaintiff expected to be paid. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d at 944. According to Lucero, insufficient evidence exists to satisfy the second and fourth elements. And, in support of that allegation, he cites the testimony by Lujan and his wife

3

wherein they indicated that they did not expect reimbursement for training and maintaining the horse since they purportedly owned it. These statements, however, are not dispositive of the matter.

First, a party may seek alternative relief under both contract and quantum meruit claims. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2005). So, the fact that the trial court found against Lujan with respect to ownership of the horse alone does not mean he could not recover under a theory of quantum meruit.

Second, Lujan and his wife testified that 1) they told Lucero before taking the horse that he (Lujan) was not going to ride horses for Lucero as he had in the past, 2) though Lujan took the horse home, he did not ride it for several months, 3) Lucero was also informed that the horse was being returned, 4) Lujan began to ride and train the horse after Lucero told him he could keep it, and 5) Lujan understood the latter comment to mean that Lucero gave Lujan the horse as a gift. To this, we add Lucero's testimony that he thought he had "loaned" the horse to Lujan to ride, agreed to compensate Lujan (but only as he had before, through the provision of roping steers), wanted to eventually sell the horse, knew Lujan was riding it in and winning roping competitions, and wherein he opined that the horse was worth $25,000 (a sum much higher than the horse's value before Lujan acquired it). Another witness testified that Lujan was known for having the ability to train good roping horses, that Silver Steel was "green" (untrained) and would buck before Lujan acquired it, and that the horse increased in value once Lujan began using it. From these circumstances, the trial court could have reasonably concluded that the parties came to no meeting of the minds with regard to the horse's ownership and training. Thus, no contract arose between Lujan and Lucero. So too could the trial court have legitimately concluded that Lucero nonetheless understood that Lujan was riding and roping with the

4

horse, that Lujan was to be compensated for riding the horse (though the type of compensation was debatable), that Lujan was in fact training Silver Steel via his riding and roping with the horse, and that the horse was acquiring a greater market value due to Lujan's efforts. In other words, some evidence existed which supported the inference that Lujan provided valuable services to Lucero which services Lucero accepted under the belief that he (Lucero) would be obligated to pay Lujan for those services in some way. And, because the trial court could so infer based upon the evidence before it, we conclude that decision to award Lujan quantum meruit was supported by legally sufficient evidence.

It may well be that Lucero's testimony with respect to the arrangement differed from that of Lujan and his wife. Nevertheless, the trial court had the authority to assess the credibility of the witnesses before it and resolve the inconsistencies. *Ponce v. Sandoval,* 68 S.W.3d 799, 806 (Tex. App.–Amarillo 2001, no pet.). It was not required to simply accept Lucero's version of what occurred. Couple this with the evidence that Lucero knew that Lujan was using the horse and thereby improving its skill and increasing by multiples its value, we cannot say the trial court's decision was clearly wrong and manifestly unjust based upon the record before it. So, the decision also enjoyed the support of factually sufficient evidence.

Accordingly, we overrule the points of error and affirm the judgment.


Brian Quinn
Chief Justice