IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 02-1012
════════════
 
The 
City of 
Keller, 
Petitioner
 
v.
 
John W. Wilson, Grace S. 
Wilson, Johnny L. Wilson and 
Nancy A. Wilson, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued 
October 19, 
2004
 
 
            
Justice Brister delivered 
the opinion of the Court, in which Chief 
Justice Jefferson, Justice 
Hecht, Justice Wainwright, 
and Justice Green joined, and in 
which Justice O’Neill and Justice Medina joined as to Parts I 
through IV.
 
Justice O’Neill filed a concurring 
opinion in which Justice Medina 
joined. 
 
Justice Johnson did not participate in 
the decision. 
 
Must an 
appellate court reviewing a verdict for legal sufficiency start by considering 
all the evidence or only part? Over the years, we have stated both as the proper 
scope of review. While some see the standards as opposing, we disagree; like a 
glass that is half-full or half-empty, both arrive at the same point regardless 
of where they start.
But both 
standards must be properly applied. Rules and reason sometimes compel that 
evidence must be credited or discarded whether it supports a verdict or 
contradicts it. Under either scope of review, appellate courts must view the 
evidence in the light favorable to the verdict, crediting favorable evidence if 
reasonable jurors could, and disregarding contrary evidence unless reasonable 
jurors could not. As we find the evidence here meets neither standard, we 
reverse.
I. Factual and Procedural History
The City of 
Keller is one of several 
fast-growing communities on the outskirts of Fort 
Worth.[1] 
As part of that growth, the City approved plans for two new subdivisions, 
Estates of Oak Run and Rancho Serena, including plans for storm water drainage. 

The 
Wilsons 
own property southeast of the new subdivisions, with a tract owned by Z.T. 
Sebastian lying between. Before development, surface water flowed generally 
north to south from the land where the subdivisions were built, across the 
Sebastian and Wilson properties, and into the Little Bear Creek Watershed. 
In 1991, the 
City adopted a Master Drainage Plan providing for drainage easements across both 
the Sebastian and Wilson properties, and thence into Little Bear Creek. The 
City’s codes require developers to comply with the Master Plan, to provide 
drainage for a 100‑year rain event, and to avoid increasing the volume or 
velocity of water discharged upon downhill properties.
The 
developers of Oak Run and Rancho Serena submitted plans to the City indicating 
they would buy a drainage easement and build a ditch forty-five feet wide and 
more than two hundred yards long across the Sebastian property, and deed both to 
the City upon completion.[2] 
The plans also included detention basins on the subdivision properties, but 
omitted any drainage easement or ditch across the Wilsons’ property. The City’s 
director of public works approved the developers’ plans, and the City accepted 
the works on completion.
In accordance 
with the Master Plan, the City built a box culvert south of the 
Wilsons’ 
property. But as the developers’ drainage ditch ended at the 
Wilsons’ 
north property line, there was no link between the two. The 
Wilsons 
alleged and the jury found this omission increased flooding on the 
Wilsons’ 
property, ruining eight acres of farmland the jury valued at almost 
$300,000.
To recover 
damages for inverse condemnation, the Wilsons had to prove the City 
intentionally took or damaged their property for public use, or was 
substantially certain that would be the result.[3] 
They do not allege the City intentionally flooded their land, but do allege it 
approved revised plans that it knew were substantially certain to have that 
effect. 
The City 
contends no evidence supports the jury’s finding of an intentional taking. It 
presented evidence that engineers for the developers, for the City, and for an 
outside firm the City retained all certified that the revised drainage plan 
complied with the City’s codes and regulations C 
including the ban against increasing downstream runoff. Thus, the City asserts 
it had no reason to be substantially certain the opposite would occur, until it 
did.
A divided 
court of appeals rejected this contention.[4] 
In its legal sufficiency review, the court refused to consider the various 
engineers’ certifications because “we are to consider only the evidence and 
inferences that tend to support the finding and disregard all evidence and 
inferences to the contrary.”[5] 
The City challenges this omission as applying the wrong scope of review.
We have on 
many occasions stated the scope of review precisely as the court of appeals says 
(the “exclusive” standard).[6] 
But we have also stated that a reviewing court must consider “all of the 
evidence” in the light favorable to the verdict (the “inclusive” standard).[7] 
Sometimes we have mentioned neither reviewing all evidence nor disregarding some 
part of it.[8] 
Finally, we have sometimes expressly mentioned both.[9] 

Although this 
Court has used both the exclusive and the inclusive standards interchangeably 
over the years, commentators say the two are different.[10] 
Because this important issue is dispositive here, we 
address it in some detail, and reserve for another day the City’s arguments that 
a governmental entity cannot be liable for approving a developer’s plans, or 
accepting rather than constructing the works at issue. 
II. Contrary Evidence That Cannot Be 
Disregarded
The question 
presented here is not a new one. More than 40 years ago, then Justice Calvert[11] 
addressed the standards for reviewing legal and factual sufficiency in the 
most-cited law review article in 
Texas legal history.[12] 
Frustrated that despite this Court’s efforts to explain those standards “a 
growing number of recent decisions indicate a continuing misunderstanding,”[13] 
the author summarized and attempted to clarify 
Texas law up to 1960.[14] 
The article’s impact remains substantial today, having been cited more than 100 
times by Texas courts in the last 
five years.
According to 
the article:
 
“No 
evidence” points must, and may only, be sustained when the record discloses one 
of the following situations: (a) a complete absence of evidence of a vital fact; 
(b) the court is barred by rules of law or of evidence from giving weight to the 
only evidence offered to prove a vital fact; (c) the evidence offered to prove a 
vital fact is no more than a mere scintilla; (d) the evidence establishes 
conclusively the opposite of the vital fact.[15]
 
We have quoted 
a similar formulation on many occasions.[16]
Notably, 
Justice Calvert then proceeded to put the question before us in the proper 
context:
 
It is in 
deciding “no evidence” points in situation (c) that the courts follow the 
further rule of viewing the evidence in its most favorable light in support of 
the finding of the vital fact, considering only the evidence and the inferences 
which support the finding and rejecting the evidence and the inferences which 
are contrary to the finding.[17]
 
Clearly, 
the traditional rule in Texas has 
never been that appellate courts must reject contrary evidence in every 
no-evidence review. Instead, the traditional scope of review does not disregard 
contrary evidence if there is no favorable evidence (situation (a) above), or if 
contrary evidence renders supporting evidence incompetent (situation (b) above) 
or conclusively establishes the opposite (situation (d) above).
As 
the following examples show, this has remained the rule since. We do not presume 
to categorize all circumstances in which contrary evidence must be considered in 
a legal sufficiency review. Evidence can be disregarded whenever reasonable 
jurors could do so,[18] 
an inquiry that is necessarily fact-specific. But it is important that when 
courts use the exclusive standard and disregard contrary evidence, they must 
recognize certain exceptions to it.
A. Contextual Evidence
In 
Justice Calvert’s first situation C 
a complete absence of evidence of a vital fact C 
it is generally irrelevant whether a reviewing court considers contrary 
evidence.[19] 
If supporting evidence is absent, opposing evidence cannot change that result. 
But in a number of cases, the lack of supporting evidence may not appear until 
all the evidence is reviewed in context. 
For 
example, publications alleged to be defamatory must be viewed as a whole C 
including accompanying statements, headlines, pictures, and the general tenor 
and reputation of the source itself.[20] 
A court reviewing legal sufficiency cannot disregard parts of a publication, 
considering only false statements to support a plaintiff’s verdict or only true 
ones to support a defense verdict.[21]
Similarly, 
reviewing courts must construe contracts as a whole; we do not consider only the 
parts favoring one party and disregard the remainder, as that would render the 
latter meaningless.[22] 
Even writings executed at different times must be considered together if they 
pertain to the same transaction.[23] 

It 
is not just writings that reviewing courts must consider in context. For 
example, in reviewing intentional infliction of emotional distress claims for 
legal sufficiency, “we consider the context and the relationship between the 
parties.”[24] 
Acts that might constitute outrageous conduct when dealing with a 
hearing-impaired consumer[25] 
may be legally insufficient between business parties.[26] 
In our no-evidence reviews of successful claims, we have invariably reviewed not 
just evidence showing the conduct was outrageous, but also evidence showing 
that, in context, it was not.[27]
More 
generally, evidence cannot be taken out of context in a way that makes it seem 
to support a verdict when in fact it never did.[28] 
If a witness’s statement “I did not do that” is contrary to the jury’s verdict, 
a reviewing court may need to disregard the whole statement, but cannot rewrite 
it by disregarding the middle word alone.
Thus, 
if evidence may be legally sufficient in one context but insufficient in 
another, the context cannot be disregarded even if that means rendering judgment 
contrary to the jury’s verdict. Either “evidence contrary to the verdict” must 
be defined to exclude material contextual evidence, or it must be an exception 
to the general rule.
B. Competency Evidence
It 
has long been the rule in Texas 
that incompetent evidence is legally insufficient to support a judgment, even if 
admitted without objection.[29] 
Thus, evidence showing it to be incompetent cannot be disregarded, even if the 
result is contrary to the verdict. If the rule were otherwise, incompetent 
evidence would always be legally sufficient, because the evidence showing 
it to be incompetent could never be considered.
Thus, 
for example, if an eyewitness’s location renders a clear view of an accident 
“physically impossible,” it is no evidence of what occurred, even if the 
eyewitness thinks otherwise.[30] 
Similarly, an employee’s testimony that he was in the course and scope of his 
employment is legally insufficient to support a verdict against his employer if 
the evidence shows that legal conclusion to be incompetent.[31]
This 
exception frequently applies to expert testimony. When expert testimony is 
required, lay evidence supporting liability is legally insufficient.[32] 
In such cases, a no-evidence review cannot disregard contrary evidence showing 
the witness was unqualified to give an opinion.[33] 
And if an expert’s opinion is based on certain assumptions about the facts, we 
cannot disregard evidence showing those assumptions were unfounded.[34]
After 
we adopted gate-keeping standards for expert testimony,[35] 
evidence that failed to meet reliability standards was rendered not only 
inadmissible but incompetent as well.[36] 
Thus, an appellate court conducting a no-evidence review cannot consider only an 
expert’s bare opinion, but must also consider contrary evidence showing it has 
no scientific basis.[37] 
Similarly, review of an expert’s damage estimates cannot disregard the expert’s 
admission on cross-examination that none can be verified.[38] 

Thus, 
evidence that might be “some evidence” when considered in isolation is 
nevertheless rendered “no evidence” when contrary evidence shows it to be 
incompetent. Again, such evidence cannot be disregarded; it must be an exception 
either to the exclusive standard of review or to the definition of contrary 
evidence.
C. Circumstantial Equal Evidence
As 
noted above, Justice Calvert believed the exclusive standard applied only when a 
no-evidence challenge asserted the evidence was no more than a scintilla.[39] 
But he went on to note a “variation” that required contrary inferences to be 
considered when the equal-inference rule applied.[40]
In 
claims or defenses supported only by meager circumstantial evidence, the 
evidence does not rise above a scintilla (and thus is legally insufficient) if 
jurors would have to guess whether a vital fact exists.[41] 
“When the circumstances are equally consistent with either of two facts, neither 
fact may be inferred.”[42] 
In such cases, we must “view each piece of circumstantial evidence, not in 
isolation, but in light of all the known circumstances.”[43]
Justice 
Calvert argued there was “no necessity for the variation” because drawing an 
inference based on meager evidence was unreasonable whether or not the reviewing 
court considered the opposing inferences.[44] 
Nevertheless, he recognized that “[t]he opposing inference is present and it 
does no harm to note its presence.”[45]
In 
subsequent cases this Court has continued to note rather than disregard the 
presence of equal but opposite inferences, often because lower courts have 
overlooked them. Thus, for example, one might infer from cart tracks in spilled 
macaroni salad that it had been on the floor a long time, but one might also 
infer the oppositeC 
that a sloppy shopper recently did both.[46] 
Similarly, when injury or death occurs without eyewitnesses and only meager 
circumstantial evidence suggests what happened, we cannot disregard other meager 
evidence of equally likely causes.[47] 

Thus, 
when the circumstantial evidence of a vital fact is meager, a reviewing court 
must consider not just favorable but all the circumstantial evidence, and 
competing inferences as well.
D. Conclusive Evidence
Next, 
Justice Calvert noted that Texas 
courts conducting a no-evidence review traditionally do not disregard contrary 
evidence that conclusively establishes the opposite of a vital fact.[48] 
He argued that this is to some extent not a “true” no-evidence claim, as 
proponents may have to show not only that no evidence supports the verdict but 
that the opposite was proved as a matter of law.[49] 
There are several types of conclusive evidence. First, an appellate court 
conducting a legal sufficiency review cannot “disregard undisputed evidence that 
allows of only one logical inference.”[50] 
By definition, such evidence can be viewed in only one light, and reasonable 
jurors can reach only one conclusion from it. Jurors are not free to reach a 
verdict contrary to such evidence;[51] 
indeed, uncontroverted issues need not be submitted to 
a jury at all.[52]
Reviewing 
legal sufficiency in such cases encompasses a general no-evidence review, 
because if some evidence supports the verdict then the contrary evidence was not 
“undisputed.” But the review does not stop there; the evidence must also have 
only one logical inference. Undisputed evidence that reasonable jurors could 
disbelieve has two: (1) it is true, or (2) it is not.
Most 
often, undisputed contrary evidence becomes conclusive (and thus cannot be 
disregarded) when it concerns physical facts that cannot be denied. Thus, no 
evidence supports an impaired-access claim if it is undisputed that access 
remains along 90 percent of a tract’s frontage.[53] 
Evidence that a buyer believed a product had been repaired is conclusively 
negated by an accompanying letter to the contrary.[54] 
And an insured’s liability has not been determined by an “actual trial” if the 
insured did not appear, present evidence, or challenge anything presented by his 
opponent.[55] 

Undisputed 
contrary evidence may also become conclusive when a party admits it is true. 
Thus, a claimant’s admission that he was aware of a dangerous premises condition 
is conclusive evidence he needed no warning about it.[56] 
Similarly, an ex-employee’s admission that she obtained other employment may 
prove conclusively that she did not detrimentally rely on a defendant’s promise 
to re-hire her.[57] 
And jurors may not find that an indictment was based on a defendant’s misleading 
report when the district attorney admits it was his own mistake.[58]
It 
is impossible to define precisely when undisputed evidence becomes conclusive. 
For example, an injured employee’s return to work may prove conclusively that an 
injury was not total,[59] 
or it may not.[60] 
Circumstances in which a body is found may conclusively establish suicide,[61] 
or allow jurors to infer otherwise.[62] 
Evidence is conclusive only if reasonable people could not differ in their 
conclusions,[63] 
a matter that depends on the facts of each case.
There 
is another category of conclusive evidence, in which the evidence is 
disputed. Undisputed evidence and conclusive evidence are not the same C 
undisputed evidence may or may not be conclusive, and conclusive evidence may or 
may not be undisputed. 
Thus, 
for example, in Murdock v. Murdock, we found no evidence to support a 
verdict establishing the defendant’s paternity when blood tests conclusively 
proved he was not the child’s father.[64] 
The evidence was directly disputed C 
the child’s mother testified she had conjugal relations with no one else during 
the relevant time.[65] 
Nevertheless, we held there was no evidence to support the paternity verdict 
because of conclusive evidence to the contrary.[66]
Similarly, 
in Texas & New Orleans Railroad Co. v. Compton, we found no evidence 
that a railroad’s negligence caused an automobile to slam into the sixtieth car 
of a slow-moving train.[67] 
Again, the evidence was hotly disputed C 
while railroad witnesses testified that warning signs were in place at the 
crossing, the car’s driver and a passenger testified they saw nothing, and would 
have been able to stop if they had.[68] 
Nevertheless, we held there was no evidence to support the claim because, if the 
driver could not see the side of a train before he hit it, he could not have 
seen a crossing sign either.[69]
Of 
course, there are few instances in which disputed evidence is conclusive, and 
many instances in which undisputed evidence is not. As our sister court has 
noted, testimony by a paid informant is legally sufficient to support a 
conviction, even if “[t]wenty nuns testify that the 
defendant was with them at the time, far from the scene of the crime ... [and] 
[t]wenty more nuns testify that they saw the informant 
commit the crime.”[70] 
But a more famous clerical hypothetical by Judge Learned Hand shows the opposite 
limit:
 
If, 
however, it were proved by twenty bishops that either party, when he used the 
words [in a contract], intended something else than the usual meaning which the 
law imposes upon them, he would still be held ....[71]
 
While jurors 
may generally believe either sinners or saints, their discretion is limited when 
it is proved beyond question that an “eyewitness” was actually far away in 
prison or totally blind on the day of the crime. 
Proper 
legal-sufficiency review prevents reviewing courts from substituting their 
opinions on credibility for those of the jurors, but proper review also prevents 
jurors from substituting their opinions for undisputed truth. When evidence 
contrary to a verdict is conclusive, it cannot be disregarded. 

E. Clear-and-Convincing Evidence
Since 
the time of Justice Calvert’s article, new claims and burdens of proof have 
arisen that require additions to the four types of no-evidence review Justice 
Calvert considered exhaustive. Beginning with the United States Supreme Court’s 
opinion in Jackson v. Virginia, appellate courts have recognized that, 
while “one slender bit of evidence” may be all a reviewing court needs to affirm 
a verdict based on the preponderance of the evidence, a higher burden of proof 
requires a higher standard of review.[72] 
As we recently stated, the standard for legal sufficiency works in tandem with 
the standard of review C 
“whenever the standard of proof at trial is elevated, the standard of appellate 
review must likewise be elevated.”[73] 
If the rule were otherwise, legally sufficient evidence to support a 
preponderance-of-the-evidence verdict would satisfy the higher burdens as well, 
thus rendering their differences meaningless.[74]
Accordingly, 
we have held that a legal sufficiency review must consider all the 
evidence (not just that favoring the verdict) in reviewing cases of parental 
termination,[75] 
defamation,[76] 
and punitive damages.[77] 
In such cases, again, evidence contrary to a verdict cannot be 
disregarded.
F. Consciousness Evidence
Further, 
we have had to particularize legal-sufficiency review in cases involving what a 
party knew or why it took a certain course, as they are not amenable to review 
under the exclusive standard. 
Long 
before gross negligence had to meet a clear-and-convincing burden, we recognized 
in Burk Royalty Co. v. Walls that no-evidence review of such findings had 
to include “all of the surrounding facts, circumstances, and conditions, not 
just individual elements or facts.”[78] 
As then Chief Justice Greenhill noted in concurring, speeding and running a red 
light may not be legally sufficient evidence of gross negligence if one’s wife 
and daughter are bleeding to death in the back seat.[79] 
Reviewing courts assessing evidence of conscious indifference cannot disregard 
part of what a party was conscious of.[80]
For 
the same reasons, the exclusive standard of review has proven problematic in 
insurance bad-faith cases. Liability in such cases requires proof that the 
insurer denied coverage after it became reasonably clear.[81] 
But that standard will always be met if reviewing courts must disregard any 
evidence that coverage was unclear.[82] 
Subsequent cases show that reviewing courts are in fact looking at all 
the evidence to determine whether coverage was reasonably clear.[83]
This 
problem arises in other contexts as well. In discrimination cases, discharged 
employees will never have to prove that the reason given for termination was a 
pretext if no-evidence review must disregard that reason.[84] 
Government officials will never be entitled to immunity if we consider only 
evidence suggesting they should have acted differently.[85] 
And limitations will never run under the discovery rule if reviewing courts must 
disregard all evidence that claimants knew of their claims.[86] 

This 
is not to say a reviewing court may credit a losing party’s explanations or 
excuses if jurors could disregard them. For example, while an insurer’s reliance 
on an expert report may foreclose bad faith recovery,[87] 
it will not do so if the insurer had some reason to doubt the report.[88] 
But a reviewing court cannot review whether jurors could reasonably disregard a 
losing party’s explanations or excuses without considering what they were.
III. Contrary Evidence 
That Must Be Disregarded
As 
trials normally focus on issues that jurors could decide either way, reviewing 
courts must disregard evidence contrary to the verdict far more often than they 
must consider it. Just as no-evidence review that starts by disregarding 
contrary evidence often must end up considering considerably more, no-evidence 
review that begins by considering all the evidence must usually end up 
considering considerably less. 
Again, 
we do not presume to categorize all circumstances in which contrary evidence 
must be disregarded; a few examples serve to demonstrate that even under the 
inclusive standard, viewing all the evidence in a light favorable to the verdict 
often requires that much of it be disregarded.
A. Credibility Evidence
Jurors 
are the sole judges of the credibility of the witnesses and the weight to give 
their testimony.[89] 
They may choose to believe one witness and disbelieve another.[90] 
Reviewing courts cannot impose their own opinions to the contrary.[91] 

Most 
credibility questions are implicit rather than explicit in a jury’s verdict. 
Thus, reviewing courts must assume jurors decided all of them in favor of the 
verdict if reasonable human beings could do so. Courts reviewing all the 
evidence in a light favorable to the verdict thus assume that jurors credited 
testimony favorable to the verdict and disbelieved testimony contrary to it.[92]
For 
example, viewing the evidence in the light favorable to the verdict means that 
if both parties in a traffic accident testify they had the green light, an 
appellate court must presume the prevailing party did and the losing party did 
not. If the parties to an oral contract testify to conflicting terms, a 
reviewing court must presume the terms were those asserted by the winner. When 
all the evidence is viewed in the light most favorable to the jury verdict, some 
of it must be completely discounted. Though not disregarded at the outset, the 
end result is the same.
This 
has always been our practice in cases using the inclusive scope of review. Thus, 
we have concluded that a bailee sold cotton without 
the bailor’s consent, despite the former’s denials, because the jury verdict favored the 
latter.[93] 
And we have affirmed a gross negligence verdict based on testimony that the 
defendant’s speed was 80 miles per hour, without mentioning his own testimony to 
a speed half that.[94]
Nor 
is it necessary to have testimony from both parties before jurors may disbelieve 
either. Jurors may disregard even uncontradicted and 
unimpeached testimony from disinterested witnesses.[95] 
Thus, an architect’s uncontradicted testimony that he 
relied on a 20-year warranty was not binding on jurors when the bid 
specifications he prepared included only much shorter warranties.[96] 
Nor was an insured’s uncontradicted testimony about 
lost furnishings binding on jurors when the fire scene contained several 
indications of arson but few of burnt furniture.[97] 
Even uncontroverted expert testimony does not bind 
jurors unless the subject matter is one for experts alone.[98]
Of 
course, “[t]he jury’s decisions regarding credibility must be reasonable.”[99] 
Jurors cannot ignore undisputed testimony that is clear, positive, direct, 
otherwise credible, free from contradictions and inconsistencies, and could have 
been readily controverted.[100] 
And as noted above, they are not free to believe testimony that is conclusively 
negated by undisputed facts. But whenever reasonable jurors could decide what 
testimony to discard, a reviewing court must assume they did so in favor of 
their verdict, and disregard it in the course of legal sufficiency review.
B. Conflicting Evidence
It 
is the province of the jury to resolve conflicts in the evidence.[101] 
Accordingly, courts reviewing all the evidence in a light favorable to the 
verdict must assume that jurors resolved all conflicts in accordance with that 
verdict.[102]
Again, 
this has always been the case even in those cases using the inclusive scope of 
review. For example, in such cases we have sometimes detailed only the evidence 
that supported a jury’s fraud finding.[103] 
We have affirmed a bad-faith verdict for legal sufficiency despite “significant 
evidence” that the insurer acted in good faith.[104] 
We have found some evidence of lost profits, even though income tax returns 
showed the contrary.[105] 
And we have affirmed a jury’s negligence finding despite a defendant’s evidence 
asserting it could not have prevented the accident.[106]
In 
none of these cases did we state that the scope of review required us to 
disregard evidence contrary to the verdict; instead, we started by considering 
the entire record in each. But in each case we either discounted or never 
mentioned conflicting evidence contrary to the verdict because viewing the 
evidence in the light favorable to the verdict required us to do so.
Of 
course, it is not always clear whether evidence is conflicting. Evidence is not 
conflicting just because the parties cannot agree to it. For example, evidence 
that a hospital controlled a doctor’s rotation and patient assignments raises no 
material conflict with evidence that a different entity controlled the details 
of medical treatment, as only the latter is material in a malpractice case.[107] 
Similarly, evidence showing the terms of one loan does not conflict with 
undisputed evidence that the parties never reached an agreement regarding the 
terms of another.[108] 

But 
in every circumstance in which reasonable jurors could resolve conflicting 
evidence either way, reviewing courts must presume they did so in favor of the 
prevailing party, and disregard the conflicting evidence in their legal 
sufficiency review.
C. Conflicting Inferences
Even 
if evidence is undisputed, it is the province of the jury to draw from it 
whatever inferences they wish, so long as more than one is possible and the jury 
must not simply guess. Thus, in product liability cases jurors may find evidence 
of a defect from subsequent modifications, even if there were plenty of other 
reasons for the changes.[109] 
Even if a defendant admits approaching an intersection from the wrong way on a 
one-way street, jurors may infer the plaintiff failed to keep a proper lookout, 
as that is one possible inference from the accident itself.[110] 
Similarly, jurors may infer that relatives tore down posters of a missing child 
to assist the child’s father, even though another inference was that the signs 
simply embarrassed them.[111]
Accordingly, 
courts reviewing all the evidence in a light favorable to the verdict must 
assume jurors made all inferences in favor of their verdict if reasonable minds 
could, and disregard all other inferences in their legal sufficiency review.
IV. Reconciling the Standards
Having 
noted the dual lines of authority stating the scope of no-evidence review, and 
the proper application and exceptions to each, we turn to the question of which 
one is correct. For the reasons discussed below, we believe the answer is both. 

A. Goals: The Standards Must Be The Same
Whether 
a court begins by reviewing all the evidence or disregarding part in a 
legal-sufficiency review, there can be no disagreement about where that review 
should end. If the evidence at trial would enable reasonable and fair‑minded 
people to differ in their conclusions, then jurors must be allowed to do so.[112] 
A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this 
zone of reasonable disagreement.[113] 

Similarly, 
there is no disagreement about how a reviewing court should view evidence in the 
process of that review. Whether a reviewing court starts with all or only part 
of the record, the court must consider evidence in the light most favorable to 
the verdict, and indulge every reasonable inference that would support it.[114] 
But if the evidence allows of only one inference, neither jurors nor the 
reviewing court may disregard it.[115]
Given 
these premises, it is no coincidence that the two standards should reach the 
same result C 
indeed they must. Any scope of appellate review smaller than what 
reasonable jurors could believe will reverse some verdicts that are perfectly 
reasonable; any scope of review larger than what reasonable jurors could believe 
will affirm some verdicts that are not.
Further, 
the two must coincide if this Court is to perform its constitutional duties. 
Although factual sufficiency has been the sole domain of the intermediate 
appellate courts in Texas since 1891, our jurisdiction has always included legal 
sufficiency, as that is a question of law, not of fact.[116] 
Construing either standard to require us to do less would be just as 
unconstitutional as construing either to allow us to do more. 
This 
is not to say judges and lawyers will always agree whether evidence is legally 
sufficient. As discussed more fully below, reasonable people may disagree about 
what reasonable jurors could or must believe. But once those boundaries are 
settled, any standard of review must coincide with those boundaries C 
affirming jury verdicts based on evidence within them and reversing jury 
verdicts based on evidence that is not. Any standard that does otherwise is 
improperly applied.
B. Other Motions: The Standards Must Be The 
Same
Just 
as the scope of no-evidence review must coincide with its goals, the scope of 
review should not depend upon the motion in which it is asserted. Judgment 
without or against a jury verdict is proper at any course of the proceedings 
only when the law does not allow reasonable jurors to decide otherwise. 
Accordingly, the test for legal sufficiency should be the same for summary 
judgments, directed verdicts, judgments notwithstanding the verdict, and 
appellate no-evidence review.
            
Our statements of the standard for reviewing a directed verdict present 
the same mixed bag found with general no-evidence review. We have most often 
used the exclusive standard, stating that courts reviewing directed verdicts 
must consider only evidence supporting the nonmovant’s 
case and disregard all contrary evidence.[117] 
But we have also stated that reviewing courts should use the inclusive standard, 
considering all the evidence in a light contrary to the directed verdict.[118] 
And we have sometimes stated both, requiring reviewing courts to consider all 
the evidence in a light contrary to the directed verdict and then to disregard 
all conflicting evidence that supports it.[119]
By 
contrast, cases concerning judgments non obstante 
verdicto most often utilize the inclusive scope of 
review. Beginning with the 1931 amendment authorizing trial judges to grant 
them,[120] 
we have generally reviewed such orders by considering all the evidence in a 
light favorable to the verdict that was set aside.[121] 
In later years we have sometimes adopted the exclusive standard,[122] 
but our opinions doing so usually cite to general no-evidence cases in which no 
judgment n.o.v. was involved.[123]
The 
one exception in which both standards do not expressly appear is in the scope of 
review for summary judgments. Here, there is only one standard C 
a reviewing court must examine the entire record in the light most favorable to 
the nonmovant, indulging every reasonable inference 
and resolving any doubts against the motion.[124] 
Reviewing courts do not disregard the evidence supporting the motion; if 
they did, all summary judgments would be reversed. 
In 
practice, however, a different scope of review applies when a summary judgment 
motion is filed without supporting evidence.[125] 
In such cases, evidence supporting the motion is effectively disregarded because 
there is none; under the rule, it is not allowed. Thus, although a reviewing 
court must consider all the summary judgment evidence on file, in some cases 
that review will effectively be restricted to the evidence contrary to the 
motion.
The 
standards for taking any case from the jury should be the same, no matter what 
motion is used. If only one standard were proper, we would not expect both to 
appear in cases reviewing directed verdicts, judgments notwithstanding the 
verdict, and summary judgments. But both do.
C. Federal Courts: The Standards Are The Same
The 
federal courts have had a similar split of authority between the inclusive and 
exclusive standards for scope of review. But no longer C 
the United States Supreme Court recently concluded in Reeves v. Sanderson 
Plumbing Products, Inc. that the two tests are the same.[126]
Under 
Rule 50 of the federal rules of procedure, a court should render judgment as a 
matter of law when “there is no legally sufficient evidentiary basis for a 
reasonable jury to find for that party on that issue.”[127] 
In deciding whether all or only part of the evidence should be considered, the 
Supreme Court stated:
 
The Courts 
of Appeals have articulated differing formulations as to what evidence a court 
is to consider in ruling on a Rule 50 motion. Some decisions have stated that 
review is limited to that evidence favorable to the nonmoving party, while most 
have held that review extends to the entire record, drawing all reasonable 
inferences in favor of the nonmovant.
 
On closer 
examination, this conflict seems more semantic than real. Those decisions 
holding that review under Rule 50 should be limited to evidence favorable to the 
nonmovant appear to have their genesis in Wilkerson 
v. McCarthy[[128]]. 
In Wilkerson, we stated that “in passing upon whether there is sufficient 
evidence to submit an issue to the jury we need look only to the evidence and 
reasonable inferences which tend to support the case of” the nonmoving party.[[129]] 
But subsequent decisions have clarified that this passage was referring to the 
evidence to which the trial court should give credence, not the 
evidence that the court should review. In the analogous context of 
summary judgment under Rule 56, we have stated that the court must review the 
record “taken as a whole.” And the standard for granting summary judgment 
“mirrors” the standard for judgment as a matter of law, such that “the inquiry 
under each is the same.” It therefore follows that, in entertaining a motion for 
judgment as a matter of law, the court should review all of the evidence in the 
record.[130]
 
We 
address the Supreme Court’s conclusion as to the most appropriate standard 
below; the relevant point here is its conclusion that differences between the 
inclusive and exclusive standards are more semantic than 
real.
D. Objections: The Standards Are Not The Same
While 
we have used the two standards for the scope of review interchangeably for many 
years in many different contexts, several arguments suggest they are not the 
same.
First, 
the courts of appeals often use the two standards in illustrations of the 
difference between legal and factual sufficiency, with the exclusive standard 
tied to the former and the inclusive standard to the latter:
 
When 
[reviewing] legal sufficiency, we consider only the evidence and 
inferences that tend to support the award of damages and disregard all evidence 
and inferences to the contrary. . . . When we review factual sufficiency, we 
consider and weigh all of the evidence and will set aside the verdict 
only if it is so against the great weight and preponderance of the evidence that 
it is clearly wrong and unjust.[131]
 
But 
there have always been exceptions to this distinction.[132] 
As demonstrated in Parts II and III above, it 
is generally true that the result of legal-sufficiency review is to 
disregard contrary evidence, but there are exceptions when a reviewing court 
cannot. It is not surprising that in drawing the general distinction between 
legal and factual sufficiency, courts have not complicated that distinction by 
listing the several exceptions in which the scope of review C 
though not the standard of review C 
may overlap.
Second, 
it has been argued that the exclusive standard “is an important prophylactic” 
against invasion of the jury's province, as appellate judges are less likely to 
consider contrary evidence when they should not if the exclusive standard is 
used.[133] 
But if that is true, the opposite should also be the case C 
appellate courts are less likely to consider contrary evidence when they must 
(as shown in Part II) if the exclusive standard is used. No matter which 
standard is used, appellate courts must take care not to consider or disregard 
too little or too much.
Conversely, 
several factors appear to favor application of the inclusive standard. First, 
when we have said “we must look only at that evidence which tends to support the 
judgment,”[134] 
we could not have been speaking literally; no glasses filter evidence, and 
judges cannot abandon such judgments to law clerks or litigants. It is often 
hard to say whether evidence does or does not support a verdict C 
the same facts may support different conclusions,[135] 
or may support one part of a verdict but not another.[136] 
Nor can evidence supporting a verdict be identified by which party offered it 
C 
parties depend on admissions and cross-examination during their opponent’s case, 
and minimize damaging evidence by presenting it during their own. As a practical 
matter, a court cannot begin to say what evidence supports a verdict without 
reviewing it all.
Second, 
an appellate court that begins by disregarding one party’s evidence may strike 
many citizens as extending something less than justice for all. Concerns about 
open government and open courts suggest an appellate process that considers all 
the evidence, though deferring to the jury’s verdict. While there is some 
dispute whether Lady Justice should wear a blindfold,[137] 
the metaphor was surely never intended to suggest that justice disregards the 
facts.
In 
sum, the exclusive standard is helpful in recognizing the distinctive roles of 
judge and jury, intermediate and supreme court. By contrast, the inclusive 
standard is helpful in recognizing what courts actually do, and must be seen to 
do. Both are important; we should avoid choosing between them if we can.
E. Conclusion: The Standards Are The Same
As 
both the inclusive and exclusive standards for the scope of legal-sufficiency 
review have a long history in Texas, as both have been used in other contexts to 
review matter-of-law motions, as the federal courts have decided the differences 
between the two are more semantic than real, and as both C 
properly applied C 
must arrive at the same result, we see no compelling reason to choose among 
them.
The 
key qualifier, of course, is “properly applied.” The final test for legal 
sufficiency must always be whether the evidence at trial would enable reasonable 
and fair‑minded people to reach the verdict under review. Whether a reviewing 
court begins by considering all the evidence or only the evidence supporting the 
verdict, legal-sufficiency review in the proper light must credit favorable 
evidence if reasonable jurors could, and disregard contrary evidence unless 
reasonable jurors could not.
While 
judges and lawyers often disagree about legal sufficiency in particular cases, 
the disagreements are almost always about what evidence jurors can or must 
credit and what inferences they can or must make. It is inevitable in human 
affairs that reasonable people sometimes disagree; thus, it is also inevitable 
that they will sometimes disagree about what reasonable people can disagree 
about. This is not a new problem; Justice Calvert noted it almost fifty years 
ago:
 
The rule as 
generally stated is that if reasonable minds cannot differ from the conclusion 
that the evidence lacks probative force it will be held to be the legal 
equivalent of no evidence. The application of the rule can lead to strange 
results. It is theoretically possible, and sometimes not far from actual fact, 
that five members of the Supreme Court will conclude that the evidence 
supporting a finding of a vital fact has no probative force, and in reaching the 
conclusion through application of the rule will thus hold, in effect, that the 
trial judge who overruled a motion for instructed verdict, the twelve jurors who 
found the existence of the vital fact, the three justices of the Court of Civil 
Appeals who overruled a “no evidence” point of error and four dissenting 
justices of the Supreme Court are not men[138] 
of “reasonable minds.”[139]
 
It 
is not hubris that occasionally requires an appellate court to find a jury 
verdict has no reasonable evidentiary basis. As Justice Frankfurter stated long 
ago:
 
Only an incompetent or a wilful judge would take a case from the jury when the issue 
should be left to the jury. But since questions of negligence are questions of 
degree, often very nice differences of degree, judges of competence and 
conscience have in the past, and will in the future, disagree whether proof in a 
case is sufficient to demand submission to the jury. The fact that [one] thinks 
there was enough to leave the case to the jury does not indicate that the other 
[is] unmindful of the jury’s function. The easy but timid way out for a trial 
judge is to leave all cases tried to a jury for jury determination, but in so 
doing he fails in his duty to take a case from the jury when the evidence would 
not warrant a verdict by it. A timid judge, like a biased judge, is 
intrinsically a lawless judge.[140]
 
V. Application to the Facts
It 
remains to apply the scope of review to the facts presented.
A 
majority of the court of appeals affirmed the verdict for the Wilsons, finding legally sufficient evidence that the City 
knew increased flooding on the Wilsons’ property was 
substantially certain to occur.[141] 
The majority pointed to the following proof. First, the Wilsons’ expert testified that the revised plan was certain 
to create flooding.[142] 
Second, as the City admittedly knew that development would increase runoff and 
the Sebastian ditch would channel it toward the Wilsons, so it knew “with absolute certainty” that flooding 
would be the result.[143] 
Third, the City “did not explain” why the Master Plan required a drainage ditch 
across the Wilsons’ property but the revised plan did 
not, thus allowing jurors to infer that the City knew this omission would cause 
flooding.[144] 

Of 
course, the City did explain why it approved the new plan C 
because three sets of engineers said the omitted ditch was unnecessary C 
but the court felt compelled by the scope of review to disregard that 
evidence.
For 
several of the reasons stated earlier, we believe the court of appeals did not 
properly apply the scope of review. The critical question in this case was the 
City’s state of mind C 
the Wilsons had to prove the City knew (not 
should have known) that flooding was substantially certain. A reviewing court 
cannot evaluate what the City knew by disregarding most of what it was told. 

Moreover, 
when a case involves scientific or technical issues requiring expert advice (as 
this one does), jurors cannot disregard a party’s reliance on experts hired for 
that very purpose without some evidence supplying a reasonable basis for doing 
so.[145] 
Here, it was uncontroverted that three sets of 
engineers certified that the revised plans met the City’s codes and regulations 
C 
and thus would not increase downstream flooding. The same firm that drew up the 
original Master Plan certified the revised one; unless the City had some reason 
to know the first certification was true and the second one was false (of which 
there was no evidence), there was only one logical inference jurors could 
draw.
None 
of the evidence cited by the court of appeals showed the City knew more than it 
was told by the engineers. The Wilsons’ expert 
testified that flooding was (in his opinion) inevitable, but not that the 
City knew it was inevitable. The Wilsons’ expert 
gave no opinion on the latter point.
Second, 
ending a ditch at a neighbor’s property line may be evidence that a defendant 
was substantially certain of the result in some cases, but not in the context of 
this one. City witnesses admitted knowing development would increase runoff at 
the head of this drainage system, but not flooding at its foot. Calculating the 
effect of detention ponds and absorption in a grassy drainage ditch forty-five 
feet wide and over two hundred yards long required hydrological formulas, 
computer models, and mathematical calculations. The omission of the ditch across 
the Wilsons’ property obviously raised concerns that 
the City investigated, but was no evidence that the City knew the advice it 
received in response was wrong. 
The 
Wilsons also point to a letter Sebastian’s attorney 
wrote the City demanding indemnity in case the new ditch flooded the Wilsons. But attorneys must protect a client from potential 
liability whether it is real or imagined C 
and justly so. In the letter, the attorney never purports to be an expert in 
hydrology, or cite the opinions of anyone who was. This letter may have required 
the City to investigate, but again is no evidence it knew the advice it received 
was wrong.[146]
Our 
concurring colleagues believe reasonable jurors could nevertheless disregard 
what all the engineers certified because the City had a financial incentive to 
believe them rather than pay the Wilsons. Of course, 
defendants have a financial incentive to avoid paying damages in every case; if 
that incentive alone is some evidence of liability, then plaintiffs create 
enough evidence to go to the jury every time they file suit.
But 
more important, this ignores what the Wilsons had to 
prove C 
not that the City might have disbelieved the engineers’ reports, but that 
it did. This requires evidence of “objective indicia of intent” showing 
the City knew identifiable harm was occurring or substantially certain to 
result.[147] 
Jurors’ doubts about the engineers’ reports or the City’s motives could not 
supply them with objective indicia that the City knew flooding would occur. 
Constitutional concerns about the roles of judge and jury do not allow either to 
make such evidence up. 
We 
agree with the court of appeals that the Wilsons 
presented some evidence that the City damaged their property, and that in 
drawing up and approving drainage plans it was acting for a public purpose. The 
missing piece in the evidence here is proof that the City knew the plans it 
approved were substantially certain to increase flooding on the Wilsons’ properties. While the City certainly knew that fact 
after the flooding started, the Wilsons never pleaded 
or submitted to the jury any takings theory other than the City’s initial 
approval.
Crediting 
all favorable evidence that reasonable jurors could believe and disregarding all 
contrary evidence except that which they could not ignore, we hold there was no 
evidence the City’s approval of the revised drainage plan was an intentional 
taking. 
Accordingly, 
we reverse the court of appeals’ judgment against the City under article I, 
section 17 of the Texas Constitution. Because the court of appeals declined to 
address the jury’s alternate verdict for the Wilsons 
on a claim under the Texas Water Code, we remand the case to that court to 
determine that issue. 
 
________________________________
Scott 
Brister
Justice
 
OPINION 
DELIVERED: June 10, 
2005




[1] The City of Fort Worth asserts in an amicus brief that in 2001 alone it 
approved 325 subdivision plats creating 5,857 residential lots within its 
extraterritorial jurisdiction, which of course excludes surrounding 
communities.

[2] Evidence at trial and briefs by amici indicate that cities normally acquire title to these 
easements to ensure they are properly mowed and maintained after the developers’ 
departure.

[3] Tex. Const. art. I, § 17; City of 
Dallas v. Jennings, 142 S.W.3d 310, 313-14 
(Tex. 2004).

[4] 86 S.W.3d 693, 715, 717. 

[5] Id. at 700.

[6] See, e.g., Wal‑Mart Stores, Inc. v. 
Canchola, 121 S.W.3d 735, 739 
(Tex. 2003) (per curiam); 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); City of Fort Worth v. Zimlich, 29 S.W.3d 62, 69 
(Tex. 2000); Wal‑Mart Stores, Inc. v. Gonzalez, 968 
S.W.2d 934, 936 (Tex. 1998); Cont’l 
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 
(Tex. 1996); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); 
Browning‑Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993); Holt 
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 
(Tex. 1992); Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992); Havner v. E‑Z Mart Stores, Inc., 825 S.W.2d 
456, 458 (Tex. 1992); Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex. 1990); Burkard v. ASCO Co., 779 S.W.2d 805, 806 (Tex. 
1989) (per curiam); Brown v. Edwards Transfer 
Co., 764 S.W.2d 220, 223 (Tex. 1988); City of Gladewater v. Pike, 727 
S.W.2d 514, 518 (Tex. 1987); King v. Bauer, 688 S.W.2d 845, 846 (Tex. 
1985); Tomlinson v. Jones, 677 S.W.2d 490, 492 (Tex. 1984); Glover v. 
Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 
(Tex. 1981) (per curiam); Holley 
v. Adams, 544 S.W.2d 367, 370 (Tex. 1976); Garza v. Alviar, 395 S.W.2d 821, 823 
(Tex. 1965); Wininger v. 
Ft. Worth & D.C. Ry. Co., 143 S.W. 1150, 1152 
(Tex. 1912). 

[7] See, e.g., St. Joseph Hosp. v. 
Wolff, 94 S.W.3d 513, 519 (Tex. 2002) (plurality op.); Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998); State Farm 
Lloyds Ins. Co. v. Maldonado, 963 S.W.2d 38, 40 (Tex. 1998); Formosa 
Plastics Corp. v. Presidio Eng'rs & Contractors, 
Inc., 960 S.W.2d 41, 48 (Tex. 1998); Merrell Dow Pharms., Inc. v. Havner, 953 
S.W.2d 706, 711 (Tex. 1997); White v. Southwestern Bell Tel. Co., 651 
S.W.2d 260, 262 (Tex. 1983); Burk Royalty v. Walls, 616 S.W.2d 911, 922 
(Tex. 1981); Harbin v. Seale, 461 S.W.2d 591, 592 (Tex. 1970); De 
Winne v. Allen, 277 S.W.2d 95, 97 (Tex. 1955); 
Hall v. Med. Bldg. of Houston, Tex., 251 S.W.2d 497, 498 (Tex. 1952). 


[8] Tarrant Reg’l Water Dist. 
v. Gragg, 151 S.W.3d 546, 552 (Tex. 2004); Bostrom Seating, Inc. v. Crane Carrier Co., 
140 S.W.3d 681, 684 (Tex. 2004); Lozano v. Lozano, 52 S.W.3d 141, 144 
(Tex. 2001) (per curiam); La.-Pac. Corp. v. 
Andrade, 19 S.W.3d 245, 247 (Tex. 1999); Latham v. Castillo, 972 
S.W.2d 66, 68 (Tex. 1998); Brown v. Bank of Galveston, Nat’l Ass'n, 963 S.W.2d 511, 513 (Tex. 1998). 


[9] See, e.g., Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 
227, 234 (Tex. 2004); Szczepanik 
v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994) (per curiam); compare Biggers v. 
Cont’l Bus Sys., Inc., 303 S.W.2d 359, 363 (Tex. 
1957) (“We may consider only that evidence, if any, which, viewed in its 
most favorable light, supports the jury findings, and we must disregard all 
evidence which would lead to a contrary result.”) (emphasis added), with 
Biggers v. Cont’l Bus Sys., 
Inc., 298 S.W.2d 79, 81 (Tex. 1956) (“[T]he duty of this Court [is] to 
examine and consider all of the evidence bearing on the controlling 
issues, and having done so to decide whether there is evidence of probative 
value to support the answers made by the jury to the issues.”) (quotation 
omitted) (emphasis added), and Cartwright v. Canode, 171 S.W. 696, 698 
(Tex. 1914) (“[W]e must reject all evidence favorable to the 
plaintiffs in error, and consider only the facts and circumstances which tend to 
sustain the verdict. . . . In considering this question, we must take into 
account all of the facts and circumstances attending the 
transaction.”).

[10] See, e.g., W. Wendell Hall, Standards 
of Review in Texas, 34 ST. MARY’S L.J. 1, 159-62 (2002); William V. Dorsaneo, III, Judges, Juries, & Reviewing Courts, 53 
SMU L.R. 1497, 1498, 1507-11 (2000); Phil Hardberger, Juries Under Siege, 30 St. Mary’s L.J. 1, 40-41 (1998). But see William Powers, Jr., 
Judge & Jury in the Texas Supreme Court, 75 
Tex. L. 
Rev. 1699, 1699-1700, 1704-19 (1997) (concluding the Court 
is not changing the no-evidence standard of review but is moving away from broad 
definitions of duty and toward particularized definitions of 
duty).

[11] Robert W. Calvert was an associate justice of this 
Court from 1950 to 1960, and Chief Justice from 1961 to 
1972.

[12] Robert W. Calvert, “No Evidence” & “Insufficient 
Evidence” Points of Error, 38 Tex. L. 
Rev. 361 (1960).

[13] Id. at 
361.

[14] “Most of what has been said here is repetitious of what 
has been said before in the cited cases and articles. The purpose of the writer 
here has been to try to bring former writings on the subject into compact form 
and under somewhat closer analysis.” Id. at 371. 


[15] Id. at 
362-63.

[16] See, e.g., King Ranch, Inc. v. Chapman, 118 
S.W.3d 742, 751 (Tex. 2003); Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); Uniroyal 
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998); Mar. 
Overseas Corp. v. Ellis, 971 S.W.2d 402, 409 (Tex. 1998); Merrell Dow 
Pharm., Inc. v. Havner, 
953 S.W.2d 706, 711 (Tex. 1997); Anderson v. City of Seven Points, 806 
S.W.2d 791, 795 n.3 (Tex. 1991); Cecil v. Smith, 804 S.W.2d 509, 510 n.2 
(Tex. 1991); Juliette Fowler Homes, Inc. v. 
Welch Assocs., Inc., 793 S.W.2d 660, 666 n.9 (Tex. 
1990).

[17] Calvert, supra note 12, at 
364.

[18] See In re J.F.C., 96 S.W.3d 256, 266 (Tex. 
2002); Uniroyal, 977 S.W.2d at 340; Triton 
Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 
443, 446 (Tex. 1982).

[19] Calvert, supra note 12, at 364 (“If there is an 
absolute absence of evidence of a vital fact . . . an appellate court has no 
occasion to concern itself with an abstract rule such as how minds of reasonable 
men might view the situation.”). 

[20] New Times, Inc. v. Isaacks, 146 S.W.3d 
144, 158-59 (Tex. 2004); Turner v. KTRK Television, Inc., 38 
S.W.3d 103, 114 (Tex. 2000); Guisti v. 
Galveston Tribune Co., 150 S.W. 874, 877-78 
(1912).

[21] Bentley v. Bunton, 94 
S.W.3d 561, 581 (Tex. 2002) (considering remarks in context of series of 
talk-show programs); Turner, 38 S.W.3d at 115 (holding defamation 
includes story in which details are right but gist is wrong). 


[22] Shell Oil Co. v. Khan, 138 S.W.3d 288, 292 
(Tex. 2004).

[23] DeWitt County Elec. Co‑op., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).

[24] Tiller v. McLure, 121 
S.W.3d 709, 714 (Tex. 2003) (per curiam); see 
also Tex. Farm Bureau Mut. Ins. Cos. v. 
Sears, 84 S.W.3d 604, 610-11 
(Tex. 2002); GTE Southwest, Inc. v. Bruce, 998 S.W.2d 
605, 612 (Tex. 1999).

[25] See George Grubbs Enters., Inc. v. Bien, 881 S.W.2d 843, 852-53 (Tex. App.CFort Worth 1994) (holding that efforts to pressure 
deaf-mute consumer to buy car were legally sufficient evidence of intentional 
infliction), rev’d on other grounds, 900 
S.W.2d 337, 338 (Tex. 1995).

[26] See Tiller, 121 S.W.3d at 714 (holding efforts 
to pressure widow of contracting party to complete project were legally 
insufficient evidence of intentional infliction).

[27] See, e.g., id. at 713-14 
(discussing contrary evidence showing defendant’s reasonable concerns about 
timeliness of plaintiff’s work); Sears, 84 S.W.3d at 612 (discussing 
contrary evidence that defendant believed claimant was involved in suspicious 
dealings).

[28] Bostrom Seating, 
Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684, 685 (Tex. 2004) (holding no 
evidence supported defect as comments from deposition “were read out of 
context”).

[29] Coastal Transp. Co. v. 
Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 n.1 
(Tex. 2004) (citing Henry v. Phillips, 151 S.W. 533, 
538 (Tex. 1912)). This rule was changed for hearsay evidence in 
1983. See Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection 
shall not be denied probative value merely because it is 
hearsay.").

[30] Tex. & P. Ry. Co. v. 
Ball, 75 S.W. 4, 6 (Tex. 1903).

[31] Minyard Food 
Stores, Inc. v. Goodman, 80 S.W.3d 573, 579 (Tex. 2002) (holding defamation 
was not in course and scope of employment as duties required employee to 
cooperate in investigation but not to lie); Robertson Tank Lines, Inc. v. Van 
Cleave, 468 S.W.2d 354, 360 (Tex. 1971) (holding truck driver was not in 
course of employment during social visit to his 
father).

[32] Bowles v. Bourdon, 219 S.W.2d 779, 782-83 (Tex. 
1949) (affirming directed verdict against malpractice claim as inadequate expert 
testimony from doctor of same school or practice as defendant rendered proof 
legally insufficient). 

[33] See Leitch 
v. Hornsby, 935 S.W.2d 114, 119 (Tex. 1996).

[34] See Burroughs Wellcome Co. v. Crye, 907 
S.W.2d 497, 499-500 (Tex. 1995) (holding opinion that spray caused frostbite was 
legally insufficient as it assumed absence of redness when plaintiff admitted 
the contrary); Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982) (holding 
opinion that physician should have warned of possible skull fracture was legally 
insufficient as it assumed physician was aware of fracture when there was no 
proof he was). 

[35] See E.I. du Pont de 
Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 
(Tex. 1995) (adopting reasoning of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 
(1993)).

[36] Merrell Dow Pharms., Inc. 
v. Havner, 953 S.W.2d 706, 714, 720 
(Tex. 1997). 

[37] Id. at 711, 724-30.

[38] Kerr‑McGee Corp. v. Helton, 133 S.W.3d 245, 
254-57 (Tex. 2004).

[39] Calvert, supra note 12, at 
364.

[40] Id. at 364-65.

[41] Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (holding 
evidence that truck caught fire unaccompanied by proof identifying any defect 
did not exceed a scintilla, as jurors would have to guess cause); Marathon 
Corp. v. Pitzner, 106 S.W.3d 724, 729 (Tex. 2003) 
(per curiam); Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 
387, 392 (Tex. 1997); W. Tel. Corp. v. McCann, 99 S.W.2d 895, 900 (Tex. 
1937); Calvert, supra note 12, at 365.

[42] Tubelite, a Div. of 
Indal, Inc. v. Risica & 
Sons, Inc., 819 S.W.2d 801, 805 (Tex. 1991); see also Litton 
Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex. 1984) (citing 
Tex. Sling Co. v. Emanuel, 431 S.W.2d 538, 541 (Tex. 
1968)).

[43] Lozano, 52 S.W.3d at 
167.

[44] Calvert, supra note 12, at 
365.

[45] Id.

[46] Wal‑Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 
934, 938 (Tex. 1998).

[47] See Marathon Corp. v. Pitzner, 106 S.W.3d 724, 729 
(Tex. 2003) (per curiam); 
McCann, 99 S.W.2d at 900.

[48] Calvert, supra note 12, at 363-64. But other 
commentators disagree. See Powers, supra note 10, at 1703-10. We 
have held that a “conclusively and as a matter of law” point may be asserted 
under a “no evidence” point. O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 
113 (Tex. 1976). And the cases in this section note that 
conclusive proof is often asserted by parties that do not carry the 
burden of proof. See also Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 
(Tex. 2001) (per curiam) (court must first examine 
record for evidence supporting verdict, ignoring all evidence to the contrary; 
if there is no such evidence, the court then examines the entire record to see 
if the contrary finding is established as a matter of law). 


[49] Calvert, supra note 12, at 363-64. But 
see, e.g., Cecil v. Smith, 804 S.W.2d 509, 510 n.2 (Tex. 1991) 
(“Cecil’s points that (1) there was no evidence to support the findings and (2) 
the contrary of each finding was established as a matter of law will hereinafter 
collectively be referred to as her "no evidence" 
points.”).

[50] St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 519-20 
(Tex. 2002) (plurality op.) (quoting Universe Life Ins. 
Co. v. Giles, 950 S.W.2d 48, 51 n.1 (Tex. 1997)).

[51] Tex. & N.O.R Co. v. Burden, 203 S.W.2d 522, 
528, 530 (Tex. 1947); see also Prudential Ins. Co. of Am. v. Krayer, 366 S.W.2d 779, 783 (Tex. 1963) (finding 
evidence of suicide undisputed after disregarding disputed portion of 
facts).

[52] Sullivan v. Barnett, 471 S.W.2d 39, 44 
(Tex. 1971); Wright v. Vernon Compress Co., 296 S.W.2d 
517, 523 (Tex. 1956) (“[T]he trial court is required to submit only 
controverted issues. No jury finding is necessary to 
establish undisputed facts.”); Clark v. Nat’l Life & Accident Ins. 
Co., 200 S.W.2d 820, 822 (Tex. 1947) (“Uncontroverted questions of fact need not be and should not 
be submitted to the jury for its determination.”); S. Underwriters v. 
Wheeler, 123 S.W.2d 340, 341 (Tex. 1939).

[53] County of Bexar v. Santikos, 144 S.W.3d 455, 460-61 
(Tex. 2004).

[54] PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 
79, 97-98 (Tex. 2004).

[55] State Farm Lloyds Ins. Co. v. Maldonado, 963 
S.W.2d 38, 40 (Tex. 1998).

[56] Wal‑Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 
709-10 (Tex. 2003) (per curiam).

[57] See Johnson & Johnson Med., Inc. v. Sanchez, 
924 S.W.2d 925, 930 (Tex. 1996).

[58] King v. Graham, 126 S.W.3d 75, 78-79 (Tex. 2003) 
(per curiam) (holding no evidence supported malicious 
prosecution claim as district attorney admitted prosecution was due to item he 
overlooked rather than any false statements by 
defendants).

[59] Travelers Ins. Co. v. Seabolt, 361 S.W.2d 204, 206 
(Tex. 1962) (return to regular job in which use of hand was 
required conclusively established claimant did not suffer total loss of 
use).

[60] Navarette v. 
Temple Indep. Sch. Dist., 706 S.W.2d 308, 309-10 
(Tex. 1986) (return to work did not conclusively establish 
injury was not total as claimant could not do regular work and employer 
voluntarily accommodated her with lesser duties).

[61] See, e.g., Prudential Ins. Co. of Am. 
v. Krayer, 366 S.W.2d 779, 783 
(Tex. 1963).

[62] See Republic Nat’l Life Ins. Co. v. Heyward, 536 S.W.2d 
549, 552 (Tex. 1976). 

[63] Uniroyal Goodrich 
Tire Co. v. Martinez, 977 S.W.2d 328, 340 
(Tex. 1998); Triton Oil & Gas Corp. v. Marine 
Contractors & Supply, Inc., 644 S.W.2d 443, 446 
(Tex. 1982).

[64] 811 S.W.2d 557, 560 (Tex. 1991).

[65] Id. at 558.

[66] Id. at 560. In defense of jurors, it should be noted that 
the trier-of-fact in Murdock was a 
judge.

[67] 136 S.W.2d 1113, 1115 
(Tex. 1940).

[68] Id.

[69] Id.

[70] Clewis v. 
State, 922 S.W.2d 126, 133 n.12 (Tex. Crim. App. 
1996) (en banc) (citation omitted).

[71] Hotchkiss v. Nat’l City Bank, 200 F. 287, 293 
(S.D.N.Y. 1911).

[72] 443 U.S. 307, 320 n.14 (1979).

[73] Southwestern Bell Tel. Co. v. Garza, ___ S.W.3d 
___, ___ (Tex. 2004).

[74] Our sister court reviews the legal sufficiency of 
criminal convictions by considering “all evidence which the jury was 
permitted, whether rightly or wrongly, to consider” in the light most favorable 
to the prosecution. Moff v. State, 131 
S.W.3d 485, 488 (Tex. Crim. App. 2004); see also 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. 
Crim. App. 2004).

[75] In re J.F.C., 96 S.W.3d 256, 266 
(Tex. 2002).

[76] Bentley v. Bunton, 94 
S.W.3d 561, 596 (Tex. 2002); Turner v. KTRK Television, Inc., 38 
S.W.3d 103, 120 (Tex. 2000).

[77] Garza, ___ S.W.3d at 
___.

[78] 616 S.W.2d 911, 922 (Tex. 1981).

[79] Id. at 926 (Greenhill, C.J., 
concurring).

[80] See Coastal Transp. Co. v. 
Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234-35 
(Tex. 2004).

[81] Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 
55-56 (Tex. 1997). 

[82] See id. at 51 (noting same problem with previous 
test whether insurer had reasonable basis for denying 
claim).

[83] See Rocor Int’l, Inc. v. 
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262-63 (Tex. 2002) (finding no 
evidence of bad faith based in part on defendant’s correspondence showing 
misunderstanding regarding settlement terms); State Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 45 (Tex. 
1998)(affirming bad-faith verdict after noting that insurer gave contradictory 
reasons for not interviewing potential arsonists); Minn. Life Ins. Co. v. 
Vasquez, 133 S.W.3d 320, 330 (Tex. App.CCorpus Christi 2004, pet. filed) (finding some evidence 
of bad faith because, though insurer showed hospital stymied its efforts to 
obtain records, insurer failed to seek same information from other sources); 
Allstate Tex. Lloyds v. Mason, 123 S.W.3d 690, 704-06 (Tex. 
App.CFort Worth 2003, no pet.) (reversing bad-faith verdict 
for legal insufficiency because insurer reasonably relied on expert report); 
Allison v. Fire Ins. Exch., 98 S.W.3d 227, 249-50 (Tex. App.CAustin 2002, pet. granted, judgm’t vacated w.r.m.) (affirming 
bad-faith verdict after reviewing insurer’s reasons for delay and insured’s 
responsive evidence); Oram v. State Farm 
Lloyds, 977 S.W.2d 163, 167 (Tex. App.CAustin 1998, no pet.) (reversing bad-faith verdict for 
legal insufficiency because insurer’s interpretation of exclusion was reasonable 
though incorrect). 

[84] Wal‑Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 
(Tex. 2003) (per curiam) (noting 
liability may be established by proof of discrimination plus proof employer’s 
reason was pretext); Cont’l Coffee Prods. 
Co. v. Cazarez, 937 S.W.2d 444, 452 
(Tex. 1996) (same).

[85] See, e.g., Univ. of Houston v. 
Clark, 38 S.W.3d 578, 583 (Tex. 2000) (noting good-faith test considers all 
circumstances on which official acted).

[86] See, e.g., 
PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 
79, 94 (Tex. 2004) (holding no evidence supported jury verdict applying 
discovery rule based on contrary evidence that claimant’s predecessor knew 3,000 
windows had failed).

[87] See, e.g., Provident Am. Ins. Co. v. 
Castaneda, 988 S.W.2d 189, 194-95 (Tex. 1998) (finding no evidence insurer denied claim in bad 
faith due to conflicting medical evidence).

[88] See, e.g., State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 
(Tex. 1997) (holding some evidence showed expert report was 
pretext and thus denial of claim had no reasonable 
basis).

[89] Golden Eagle Archery, Inc. v. 
Jackson, 116 S.W.3d 757, 761 
(Tex. 2003); Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 
27, 28 (Tex. 1993); McGalliard 
v. Kuhlmann, 722 S.W.2d 694, 697 
(Tex. 1986); Edrington v. 
Kiger, 4 Tex. 89, 93 (1849).

[90] McGalliard, 722 S.W.2d 
at 697; Silcott v. Oglesby, 721 S.W.2d 
290, 293 (Tex. 1986); Ford v. Panhandle & Santa Fe Ry. Co., 252 S.W.2d 561, 563 (Tex. 1952) (holding it was 
up to jurors “to resolve conflicts and inconsistencies in the testimony of any 
one witness as well as in the testimony of different witnesses”); Houston, E. 
& W.T. Ry. Co. v. Runnels, 47 S.W. 971, 972 
(Tex. 1898).

[91] Turner v. KTRK Television, Inc., 38 S.W.3d 103, 
120 (Tex. 2000). 

[92] Runnels, 47 S.W. at 
972.

[93] Cochran v. Wool Growers Cent. Storage Co., 166 
S.W.2d 904, 907 (Tex. 1942) (noting the Court “read the entire statement of 
facts”).

[94] Harbin v. Seale, 461 S.W.2d 591, 594 
(Tex. 1970); compare 
Harbin v. Seale, 454 
S.W.2d 271, 272 (Tex. Civ. App.CDallas 1970) (reporting defendant’s testimony that he 
was traveling only 40 miles per hour), rev’d, 
461 S.W.2d 591 (Tex. 1970).

[95] MCI Telecomms. Corp. v. 
Tex. Utils. Elec. 
Co., 995 S.W.2d 647, 653-54 
(Tex. 1999) (holding evidence allowed jurors to disbelieve 
defendant’s experts’ testimony even though plaintiff’s expert’s testimony was 
shown to be in error); Runnels, 47 S.W. at 972; Cheatham v. 
Riddle, 12 Tex. 112, 118 (1845).

[96] PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 
79, 100 (Tex. 2004).

[97] Anchor Cas. 
Co. v. Bowers, 393 
S.W.2d 168, 169-70 (Tex. 1965).

[98] Uniroyal Goodrich 
Tire Co. v. Martinez, 977 S.W.2d 328, 338 
(Tex. 1998); McGalliard 
v. Kuhlmann, 722 S.W.2d 694, 697 
(Tex. 1986).

[99] Bentley v. Bunton, 94 
S.W.3d 561, 599 (Tex. 2002).

[100] See Tex. R. 
Civ. P. 166a(c); Wal‑Mart Stores, Inc. v. Reece, 81 
S.W.3d 812, 817 (Tex. 2002) (finding no evidence that store knew of puddle based 
in part on uncontradicted testimony by only employee 
in the area); In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000); WFAA‑TV, 
Inc. v. McLemore, 978 S.W.2d 568, 574 (Tex. 1998) (holding reporter’s 
detailed explanation of foundation of report established lack of malice as 
matter of law).

[101] See, e.g., Dresser Indus., Inc. v. 
Lee, 880 S.W.2d 750, 754 (Tex. 1993); Lyons v. Millers Cas. Ins. 
Co., 866 S.W.2d 597, 601 
(Tex. 1993); Biggers v. 
Cont’l Bus Sys., Inc., 303 S.W.2d 359, 365 
(Tex. 1957); Howard Oil Co. v. Davis, 13 S.W. 665, 667 
(Tex. 1890) (holding reviewing court must uphold jury verdict 
despite strong evidence to the contrary if evidence is conflicting). 


[102] See, e.g., Gen. Motors Corp. v. 
Sanchez, 997 S.W.2d 584, 592 (Tex. 1999); Caller‑Times Publ’g 
Co. v. Triad Communications, Inc., 826 S.W.2d 576, 580 
(Tex. 1992); Bendalin v. 
Delgado, 406 S.W.2d 897, 899 (Tex. 1966).

[103] Formosa Plastics Corp. 
USA v. Presidio Eng'rs & 
Contractors, Inc., 960 S.W.2d 41, 48-49 
(Tex. 1998).

[104] Associated Indem. Corp. v. 
CAT Contracting, Inc., 964 S.W.2d 276, 286 
(Tex. 1998).

[105] White v. Southwestern Bell Tel. Co., 651 S.W.2d 
260, 262-63 (Tex. 1983).

[106] Hall v. Med. Bldg. of 
Houston, 251 S.W.2d 497, 502 
(Tex. 1952). 

[107] St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 542-43 
(Tex. 2002) (plurality op.).

[108] T.O. Stanley Boot Co. v. Bank of 
El 
Paso, 847 S.W.2d 
218, 221 (Tex. 1992).

[109] Uniroyal Goodrich 
Tire Co. v. Martinez, 977 S.W.2d 328, 341-42 
(Tex. 1998).

[110] De Winne v. Allen, 277 
S.W.2d 95, 98-99 (Tex. 1955).

[111] Lozano v. Lozano, 52 S.W.3d 141, 144 
(Tex. 2001) (per curiam); 
id. at 162-63 (Hecht, J., concurring and 
dissenting).

[112] See Tarrant Reg’l Water 
Dist. v. Gragg, 151 S.W.3d 546, 552 
(Tex. 2004); Coastal Transp. Co. 
v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 (Tex. 2004); Ford 
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 
2004); Mobil Oil Corp. v. Ellender, 968 S.W.2d 
917, 922 (Tex. 1998); Merrell Dow Pharm., Inc. v. 
Havner, 953 S.W.2d 706, 711 (Tex. 1997); 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Orozco v. 
Sander, 824 S.W.2d 555, 556 (Tex. 1992); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983); Corbin v. 
Safeway Stores, Inc., 648 S.W.2d 292, 297 (Tex. 1983) (per curiam).

[113] See William Powers, Jr. & Jack Ratliff, 
Another Look at “No Evidence” & “Insufficient Evidence,” 69 
Tex. L.R. 515, 517-20 (1991).

[114] Gragg, 151 S.W.3d at 
552; St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 519 (Tex. 2002) (plurality 
op.); Southwestern Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 54 
(Tex. 1998) (per curiam); Formosa Plastics Corp. 
USA v. Presidio Eng’rs & Contractors, Inc., 
960 S.W.2d 41, 48 (Tex. 1998); Havner, 953 
S.W.2d at 711; Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 75 (Tex. 
1997) (Hecht, J., concurring); Preferred Heating & Air Conditioning Co. 
v. Shelby, 778 S.W.2d 67, 68 (Tex. 1989) (per curiam); Burk Royalty Co. v. Walls, 616 S.W.2d 911, 
922 (Tex. 1981); Harbin v. Seale, 461 S.W.2d 591, 592 (Tex. 1970); W. 
Tel. Corp. v. McCann, 99 S.W.2d 895, 898 (Tex. 
1937).

[115] See St. Joseph Hosp., 94 S.W.3d at 519‑20 (Tex. 
2002) (plurality op.); Giles, 950 S.W.2d at 51 n. 1 (citing Wininger v. Ft. Worth & D.C. Ry. Co., 143 S.W. 1150, 1152 (Tex. 1912) and Tex. 
& N.O. Ry. Co. v. Rooks, 293 S.W. 554, 556‑57 
(Tex. Comm’n. App. 1927)). 


[116] Southwestern Bell Tel. Co. v. Garza, ___ S.W.3d 
___, ___ (Tex. 2004) (citing Choate v. San Antonio & A.P. Ry., 44 S.W. 69, 69 (Tex. 1898); Muhle v. 
N.Y., T. & M. Ry., 25 S.W. 607, 608 
(Tex. 1894)).

[117] Coastal Transp. Co. v. 
Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 
(Tex. 2004); Qantel Bus. 
Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 303 (Tex. 1988); Hart 
v. Van Zandt, 399 S.W.2d 791, 793 (Tex. 1965); Triangle Motors v. 
Richmond, 258 S.W.2d 60, 61 (Tex. 1953); Ford v. Panhandle & Santa Fe 
Ry. Co., 252 S.W.2d 561, 562 (Tex. 1952); Anglin v. Cisco Mortgage Loan Co., 141 S.W.2d 
935, 938 (Tex. 1940).

[118] Bostrom Seating, 
Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684 (Tex. 2004); S.V. v. 
R.V., 933 S.W.2d 1, 8 (Tex. 1996); Colvin v. Red Steel Co., 682 
S.W.2d 243, 245 (Tex. 1984); White v. Southwestern Bell Tel. Co., 651 
S.W.2d 260, 262 (Tex. 1983); Seideneck v. 
Cal Bayreuther Assocs., 451 S.W.2d 752, 753 (Tex. 
1970); Dunagan v. Bushey, 263 S.W.2d 148, 153 (Tex. 1953); Fitz‑Gerald v. Hull, 237 S.W.2d 256, 258 (Tex. 
1951); Kelly v. McKay, 233 S.W.2d 121, 122 (Tex. 1950); White v. 
White, 172 S.W.2d 295, 296 (Tex. 1943); McAfee v. Travis Gas Corp., 
153 S.W.2d 442, 445 (Tex. 1941); Wellington Oil Co. v. Maffi, 150 S.W.2d 60, 61 (Tex. 1941); Chicago, R.I. 
& G. Ry. Co. v. Carter, 261 S.W. 135, 135 
(Tex. Com. App. 1924, judgm’t adopted); Charles v. 
El Paso Elec. Ry. Co., 254 S.W. 1094, 1094-95 
(Tex. Com. App. 1923, holding approved, judgm’t 
adopted).

[119] Szczepanik v. First 
S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994) (per curiam); Vance 
v. My Apartment Steak House of San Antonio, Inc., 677 S.W.2d 480, 483 (Tex. 
1984); Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983); 
Jones v. Tarrant Util. Co., 638 S.W.2d 862, 865 (Tex. 1982); Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 
1978); Henderson v. Travelers Ins. Co., 544 S.W.2d 649, 650 (Tex. 1976); 
Jones v. Nafco Oil & Gas, Inc., 380 S.W.2d 
570, 574 (Tex. 1964).

[120] Act of April 25, 1931, 42d 
Leg., R.S., ch. 77, § 1, 1931 Tex. Gen. Laws 119; 
Myers v. Crenshaw, 137 S.W.2d 7, 13 (Tex. 1940); Hines v. Parks, 96 S.W.2d 970, 971 
(Tex. 1936). Cf. Deal v. Craven, 277 S.W. 1046, 
1047 (Tex. Com. App. 1925, judgm’t adopted) (“It has 
long been settled in this state that the judgment must follow the verdict, and 
that the courts are without power to enter a judgment notwithstanding a verdict 
upon a material issue.”). 

[121] Brown v. Bank of Galveston, Nat’l Ass'n, 963 S.W.2d 511, 513 (Tex. 1998) (“[W]e consider 
the evidence in the light most favorable to the verdict and reasonable 
inferences that tend to support it.”); Trenholm v. Ratcliff, 646 S.W.2d 927, 931 
(Tex. 1983) (“In acting on the motion [for judgment notwithstanding the 
verdict], all testimony must be viewed in a light most favorable to the 
party against whom the motion is sought, and every reasonable intendment 
deducible from the evidence is to be indulged in that party's favor.”) (emphasis 
added); Dowling v. NADW Mktg., Inc., 631 S.W.2d 726, 728 
(Tex. 1982) (same); Douglass v. Panama, Inc., 504 
S.W.2d 776, 777 (Tex. 1974) (same); Leyva 
v. Pacheco, 358 S.W.2d 547, 550 (Tex. 1962) (same); Houston Fire & Cas. Ins. Co. v. 
Walker, 260 S.W.2d 600, 603-04 
(Tex. 1953) (affirming trial court’s implied disregard of one 
jury answer based on “consideration of the transcript as a whole”); Burt v. 
Lochausen, 249 S.W.2d 194, 199 
(Tex. 1952) (“[W]e must consider all the testimony in the 
record from the standpoint most favorable to the plaintiff.”) (emphasis 
added); Neyland v. Brown, 170 S.W.2d 
207, 211 (Tex. 1943) (considering judgment non obstante veredicto “in the light 
of the record as a whole”); Le Master v. Fort Worth Transit Co., 160 
S.W.2d 224, 225 (Tex. 1942) (“[W]e must view LeMaster’s testimony, as well as all other testimony in 
the record, from a standpoint most favorable to him.”) (emphasis added); 
McAfee v. Travis Gas Corp., 153 S.W.2d 442, 445 (Tex. 1941) (“[W]e must 
regard the evidence contained in this record in its most favorable light for 
McAfee . . . because of the instructed verdict and judgment non obstante veredicto.”); see also 
Ballantyne v. Champion Builders, Inc., 144 S.W.3d 
417, 424-29 (Tex. 2004) (upholding judgment non obstante veredicto based on 
conclusive evidence contrary to verdict).

[122] See Tiller v. McLure, 
121 S.W.3d 709, 713 (Tex. 2003) (per curiam); 
Wal‑Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 
(Tex. 2003) (per curiam); Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 
227 (Tex. 1990); Best v. Ryan Auto Group, Inc., 786 S.W.2d 
670, 671 (Tex. 1990) (per curiam); Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 
(Tex. 1986); Tomlinson v. Jones, 677 S.W.2d 490, 492 
(Tex. 1984); Williams v. Bennett, 610 S.W.2d 144, 145 
(Tex. 1980); Freeman v. Tex. Comp. Ins. Co., 603 
S.W.2d 186, 191 (Tex. 1980); Dodd v. 
Tex. Farm Prods. Co., 576 S.W.2d 812, 814-15 
(Tex. 1979); Campbell v. Northwestern Nat’l Life Ins. Co., 573 S.W.2d 496, 497 
(Tex. 1978); Miller v. Bock Laundry Mach. Co., 568 
S.W.2d 648, 650 (Tex. 1977); Sobel v. 
Jenkins, 477 S.W.2d 863, 865 (Tex. 1972); C. & R. Transp., Inc. v. Campbell, 406 S.W.2d 191, 193 
(Tex. 1966).

[123] See Tiller, 121 S.W.3d at 713 (citing 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001)); Miller, 102 S.W.3d at 709 (same); 
Best, 786 S.W.2d at 671 (citing King v. Bauer, 688 S.W.2d 845, 846 
(Tex. 1985)); Tomlinson, 677 S.W.2d at 492 (citing 
Glover v. Tex. Gen. Indem. 
Co., 619 S.W.2d 400, 401 
(Tex. 1981)); Campbell, 573 S.W.2d at 497 (citing Martinez v. Delta Brands, 
Inc., 515 S.W.2d 263, 265 (Tex. 1974)); Campbell, 406 S.W.2d at 193 (citing Cartwright v. Canode, 171 S.W. 696, 697-98 
(Tex. 1914)). 

[124] IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. 
Mason, 143 S.W.3d 794, 798 (Tex. 2004); Provident Life & Accident 
Ins. Co. v. Knott, 128 S.W.3d 211, 215-16 (Tex. 2003); Wal‑Mart Stores, 
Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002); Gonzalez v. Mission 
Am. Ins. Co., 795 S.W.2d 734, 736 (Tex. 1990); Bayouth v. Lion Oil Co., 671 S.W.2d 867, 868 
(Tex. 1984).

[125] See Tex. R. 
Civ. P. 166a(i).

[126] 530 U.S. 133, 150 (2000). 

[127] Fed. R. 
Civ. P. 50(a)(1).

[128] 336 U.S. 53 (1949).

[129] Id. at 57.

[130] Reeves, 530 
U.S. at 149-50 (citations 
omitted).

[131] Carter v. Steverson & 
Co., 106 S.W.3d 161, 166 (Tex. App.CHouston [1st Dist.] 2003, pet. denied) (emphasis added) 
(citation omitted); accord Long v. Long, 144 S.W.3d 64, 67 (Tex. 
App.CEl Paso 2004, no pet.); Gore v. Scotland Golf, 
Inc., 136 S.W.3d 26, 29 (Tex. App.CSan Antonio 2003, pet. denied); Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 438 (Tex. 
App.CDallas 2002, pet. denied); N. Am. Van Lines, Inc. v. 
Emmons, 50 S.W.3d 103, 113 n.3 (Tex. App.CBeaumont 2001, pet. denied); Molina v. Moore, 33 
S.W.3d 323, 329 (Tex. App.CAmarillo 2000, no pet.); Wal‑Mart Stores, Inc. v. 
Itz, 21 S.W.3d 456, 470 n.3 (Tex. App.CAustin 2000, pet. denied); see also In re King's 
Estate, 244 S.W.2d 660, 661 (Tex. 1951) (per curiam) (holding court of appeals erred in failing to 
distinguish between legal and factual sufficiency review by not weighing all the 
evidence when conducting the latter). 

[132] Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 
(Tex. 1981) (noting that review of gross negligence finding by considering all 
the evidence appeared to but did not conflict with traditional no-evidence 
test).

[133] Dorsaneo, supra note 
10, at 1503; see also Hardberger, supra 
note 10, at 17 (arguing exclusive standard is “designed to afford high 
deference to jury verdicts”).

[134] State v. Biggar, 873 
S.W.2d 11, 13 (Tex. 1994).

[135] See, e.g., 
CMH Homes, Inc. v. Daenen, 15 S.W.3d 
97, 102 (Tex. 2000) (noting plaintiff argued defendant’s frequent inspections of 
stairs showed knowledge of inherent danger, while court held it showed the 
opposite as inspections found nothing); State Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 45 
(Tex. 1998) (affirming bad-faith verdict after noting 
insurer’s reasons for denial were contradictory).

[136] See, e.g., Wal-Mart Stores, Inc. v. 
Alexander, 868 S.W.2d 322, 327 (Tex. 1993) (noting evidence of single previous minor stumble 
supported negligence finding but not gross 
negligence).

[137] See Judith Resnik, 
Managerial Judges, 96 Harv. L.R. 
374, 382-83 (1982) (noting that images of justice appeared blindfolded 
only within the last four hundred years).

[138] Justice Calvert’s use of the masculine in 1960 may 
perhaps be forgiven, for although Hattie Hennenberg, 
Hortense Ward, and Ruth Brazzil served temporarily on this Court in 1925, and Sarah 
T. Hughes was appointed as a state district judge ten years later, it was not 
until 1954 that the Texas Constitution was amended to allow women to serve as 
jurors, and not until 1973 that Mary Lou Robinson became the first women to 
serve as a state appellate judge. See James T. “Jim” Worthen, The Organizational & Structural Development 
of Intermediate Appellate Courts in Texas, 46 S. 
Tex. L. 
Rev. 33, 75 (2004); Robert L. Dabney, 
Jr. We Were There, Houston B.J. Nov.-Dec. 1999, at 42, 44.

[139] Calvert, supra note 12, at 
364.

[140] Wilkerson v. McCarthy, 336 
U.S. 53, 65 (1949) (Frankfurter, J., 
concurring).

[141] 86 S.W.3d 693, 709.

[142] Id. at 703, 705.

[143] Id. at 705.

[144] Id. at 704-05.

[145] Provident Am. Ins. Co. v. Castañeda, 988 S.W.2d 189, 194-95 (Tex. 1998); see 
also State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 
448 (Tex. 1997) (holding reliance on expert report did not foreclose bad‑faith 
claim because claimant “presented evidence from which a fact‑finder could 
logically infer that Haag's reports were not objectively prepared, that State 
Farm was aware of Haag's lack of objectivity, and that State Farm's reliance on 
the reports was merely pretextual.”).

[146] Cf. Nissan Motor Co. Ltd. v. Armstrong, 145 
S.W.3d 131, 140 (Tex. 2004) (holding complaint letters may require 
manufacturer to investigate, but are not evidence complaints are 
true).

[147] Tarrant Reg’l Water Dist. 
v. Gragg, 151 S.W.3d 546, 555 
(Tex. 2004) (emphasis 
added).